IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 9, 2009

# STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES
## v. V.L.S.C. AND M.M.S.

**Appeal from the Juvenile Court for Rutherford County**
**No. TC 895      Donna Scott Davenport, Judge**

---

**No. M2009-00890-COA-R3-PT - Filed November 13, 2009**

---

Father challenges the trial court's termination of his parental rights on the grounds of abandonment by failing to visit and by engaging in conduct exhibiting a wanton disregard for the child's welfare. Finding that the trial court's decision is supported by clear and convincing evidence, the judgment terminating Father's parental rights is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, J., joined. PATRICIA J. COTTRELL, P. J., M. S., not participating.

Andrew L. Messick, Murfreesboro, Tennessee, for the appellant M.M.S.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Joshua Davis Baker, Assistant Attorney General, for the appellee, State of Tennessee Department of Children's Services.

## OPINION

### I. Procedural and Factual History

The Tennessee Department of Children's Services ("DCS") instituted this proceeding to terminate the parental rights of M.M.S. ("Father") and V.S.C. (" Mother")[1] to E.M.S. on February 29, 2008.[2] E.M.S. had been in the custody of DCS since August 16, 2006, when an emergency protective custody order was issued by the Rutherford County Juvenile Court placing him in

---

[1] To protect the identity of the child, the parents' initials will be used in this opinion.

[2] Because M.M.S. was not married to E.M.S.'s mother at the time of the birth, the Petition to Terminate also named "Any Unknown Father of [E.M.S.]" as an additional Respondent.

temporary DCS custody due to the arrest of both parents on drug trafficing charges.[3]  The original petition asserted that termination was warranted pursuant to Tenn. Code Ann. § 36-1-113(g)(3) - persistence of conditions; the ground of abandonment by an incarcerated person (Tenn. Code Ann. §§ 36-1-113(g)(3) and 36-1-102(1)(a)(iv), -102(1)(C) and -102(1)(E)) was added by amendment to the petition.

At the time DCS filed the petition for temporary custody of E.M.S., Father was unable to be located and was being sought by the United States Marshal's service.  He was captured on March 27, 2007 in California and was incarcerated at the time the petition to terminate his parental rights was filed.  He subsequently pled guilty to conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin.  Father did not visit or call E.M.S. prior to his being arrested.

Because of logistical difficulties it was necessary for the trial court to hold separate hearings for Mother and Father and the hearing for Father was held in Rutherford County on March 4 and 5, 2009.  Following the hearing, the court entered its order finding that Father had abandoned E.M.S. by failing to visit E.M.S. during the four months preceding his incarceration and by engaging in conduct prior to his incarceration that exhibited a wanton disregard for the welfare of E.M.S.  The court further found that termination of the parental rights of Father was in the best interest of E.M.S.

Father appeals, presenting the following issues:

> 1.  Whether the trial court's ruling that [Father's] parental rights should be terminated was supported by clear and convincing evidence.
> 2.  Whether the trial court erred in concluding, by clear and convincing evidence, that termination of [Father's] parental rights was in the best interest of [E.M.S.], the minor child who is the subject of these proceedings.

## II.  Standard of Review

A parent has a fundamental right to the care, custody, and control of his or her child.  *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest.  *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer,* 455 U.S. 745 (1982)).  Our termination statues identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, 2005 WL 1021618, at *7 (Tenn. Ct. App. April 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)).  To support the termination of parental rights, petitioners must prove both the existence of one of the statutory grounds for termination and that termination

---

[3]  On August 15, 2006, the Tennessee Bureau of Investigation and other governmental agencies made over 150 arrests in connection with a multi-state drug operation; Mother, with whom E.M.S. resided at the time, was arrested and placed in federal custody.

is in the child's best interest. *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine,* 79 S.W.3d 539, 546 (Tenn. 2002); Tenn. Code Ann. § 36-1-113(c).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769; *Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.* at 653.

In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d at 654. As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

### III. Analysis

Tenn. Code Ann. § 36-1-113(g)(1) provides that a parent's rights may be terminated on the ground of abandonment as defined in Tenn. Code Ann. § 36-1-102. That statute defines abandonment, for purposes of terminating parental rights, as follows:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv).

With respect to the ground of abandonment, the trial court found as follows:

> In this case, the Court finds by clear and convincing evidence that [Father] has abandoned his child **both** by failing to visit the child during the four months immediately prior to his incarceration **and** by engaging in conduct prior to

-3-

incarceration that exhibits a wanton disregard for the welfare of the child. [Father] was arrested on March 27, 2007, and was continuously incarcerated until the present day hearing on March 5, 2009. The petition for termination of parental rights was filed on February 29, 2008. He was therefore incarcerated at the time of the filing of this petition. Prior to his incarceration, [Father] exhibited a pattern of wanton disregard by participation in a multi-state heroin distribution organization, that also involved at least twenty of the child's relatives in Middle Tennessee alone, and which involved at least eleven states. This conduct not only subjected himself to investigation, arrest and incarceration by federal authorities, but also caused the absence of possible relative placements for the child at the time of the mother's arrest and the removal of the child into State custody.

This was not an isolated instance of crime, but a widespread ongoing criminal enterprise, which required criminal intent, willfulness and activity over a long period of time, thus putting the child at substantial risk of being left without a legal caretaker. He also conspired to kidnap his child from DCS custody while he was on the run from federal felony charges, which showed an additional wanton disregard for the law, prior to his incarceration.

(Emphasis in original)

*A. Abandonment by Failure to Visit*

Father relies upon the requirements set forth in Tenn. Code Ann. § 37-2-403(a)(2)(B)(ii)(a-c) in support of his contention that "the evidence at trial strongly militates against the trial court's finding that Appellant abandoned his child by willfully failing to visit the child in the four months prior to his incarceration." Father contends that DCS did not comply with the statute and that, as a consequence, DCS could not proceed with termination based on the ground of abandonment.

Tenn. Code Ann. § 37-2-403 contains provisions governing the responsibilities of DCS when a child is placed in foster care. Specifically, the statute requires the development of a permanency plan which is presented to the court that ordered the placement for approval. Tenn. Code Ann. § 37-2-403(a)(1). Parents are to receive notice to appear at the hearing of the court's review of the plan and, at the hearing, the court is directed to explain to the parents the law relating to abandonment at Tenn. Code Ann. § 36-1-102 and that the consequences of failure to visit or support the child will be termination of parental rights. *Id.* at § (2)(B)(i).

To the extent that the statute is applicable to the facts of this case,[4] DCS did all that could be reasonably expected to comply with Tenn. Code Ann. § 37-2-403. The record reflects that E.M.S.

---

[4] Termination was instituted on the grounds of abandonment as opposed to failure to comply with the requirements of the permanency plan; consequently, the specifics of the plan were not before the court and do not form the basis of this appeal.

was taken into custody following the arrest of Mother and many family members and that there was no reasonable alternative to removal from the home. Upon the filing of the Petition to Adjudicate Dependency and Neglect, counsel was appointed for Father and an order entered on November 14, 2006 approving the permanency plan. Father, who was not listed on E.M.S.'s birth certificate and had not legitimated the child, fled at the time Mother and the other family members were arrested and remained at large until March 27, 2007; his whereabouts were unknown to DCS until his arrest and incarceration in Bowling Green, Kentucky. The affidavit of Amanda Kendall, case manager, recites that he was provided a copy of the plan following his incarceration. Father cannot be heard to complain of the consequences of the inability of DCS to locate him when he fled to avoid arrest.

Moreover, at no time prior to this appeal did Father contest or object to the termination of his parental rights on the grounds of any action or inaction of DCS. As noted by DCS, the issue of whether Father was entitled to the notice required by Tenn. Code Ann. § 37-2-403(a)(2)(B)(ii)(a-c) or, indeed, whether any notice Father received or did not receive was adequate was not presented to the trial court and, consequently, cannot be raised for the first time on appeal. *See Simpson v. Frontier Community Credit Union,* 810 S.W.2d 147, 153 (Tenn. 1991).

The proof is uncontradicted in this record that Father did not visit E.M.S. during the four months preceding Father's incarceration beginning in March 2007 and that Father was incarcerated at the time the proceeding was initiated. Termination on this ground is sustained.

## B. Abandonment by Engaging in Wanton Conduct

Likewise, the finding that Father engaged in wanton conduct which evidenced a disregard for the welfare of E.M.S. is clearly sustained by the record. As noted by the trial court, Father engaged in organized criminal activity with Mother and various other family members, including a multi-state drug distribution operation, which led to his arrest. His conduct clearly satisfies the requirements of Tenn. Code Ann. § 36-1-102(1)(A)(iv). *See In re Audrey S.* 182 S.W.3d 838, 868 (Tenn. Ct. App. 2005) (citing *State Dep't of Children's Servs. v. J.M.F.*, 2005 WL 94465, at *7-8 (Tenn. Ct. App. Jan. 11, 2005) (perm. app. denied Tenn. Mar. 21, 2005); *In re C. LaC.,* 2004 WL 533937, at *7 (Tenn. Ct. App. Mar. 17, 2004) (no Tenn. R. App. P. 11 application filed); *In re C.T.S.*, 156 S.W.3d 18, 25 (Tenn. Ct. App. 2004); *In re C.W.W.*, 37 S.W.3d 467, 474-75 (Tenn. Ct. App. 2000)).

## C. Failure to Establish Paternity

Tenn. Code Ann. § 36-1-113(g)(9)(A) provides that the parental rights of the biological father who has not established that he is the legal parent may be terminated upon certain specified grounds including: failure to pay a reasonable share of prenatal, natal and postnatal expenses; failure to make reasonable and consistent support payments; failure to seek or exercise visitation; failure to "manifest an ability and willingness to assume legal and physical custody of the child"; where placement of the child in the person's custody would pose a risk of substantial harm to the child's physical or psychological welfare; and where the father has failed to seek to establish paternity. The

trial court also determined that termination of Father's parental rights was proper because Father had failed to establish or exercise paternity of E.M.S. as contemplated by the statute.

E.M.S. was born on February 6, 2006, and the order placing him into the protective custody of DCS was entered six months later. The record shows that on August 6, 2008, six months after the petition to terminate his parental rights was filed, Father first requested genetic testing to determine if he was the biological father of E.M.S.[5] Also on August 6, 2008, Father pled guilty in federal court to the charge of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin. The record reflects that Father did not visit E.M.S. after E.M.S. was placed in protective custody nor did he establish communication with DCS. The record clearly supports the trial court's determination that Father had not established or exercised paternity of E.M.S.

*D. Best Interest of the Child*

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. The legislature has set out a list of factors for the courts to follow in determining the child's best interest at Tenn. Code Ann. § 36-1-113(i). The list of factors set forth in the statute is not exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest. *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *State of Tennessee Dep't of Children's Servs. v. T.S.W.*, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

In his brief, Father asserts that the court should never have reached the best interest analysis because "the grounds for the termination of her [sic] parental rights had never been satisfied." Father does not contend that the evidence does not support the court's finding that termination of his rights was in the best interest of E.M.S.; rather, his argument is limited to a discussion of DCS' unsuccessful efforts to secure reunification of E.M.S., an American citizen, with relatives in Mexico. He cites these efforts in support of his contention that DCS failed to use reasonable efforts to allow E.M.S. to exit custody to live with relatives.

Although Father has failed to sufficiently argue this issue, we have reviewed the record and find that the facts in support of the trial court's finding that termination was in the best interest of the child, set forth in detail in the trial court's order, are fully supported by the evidence and record. We note particularly that the record reflects that E.M.S. has significant medical challenges arising from a birth defect called hemifacial microsomia, which causes craniofacial abnormalities and developmental delays; at the time of the hearing, he was being treated by specialists at Vanderbilt Children's Hospital and the condition will call for extensive surgery and treatment in the future.

---

[5] The results of the paternity test established a 99.99% probability that Father was the biological father of E.M.S.

These challenges were a substantial factor in the efforts of DCS to secure the best placement for E.M.S. and in the trial court's determination of E.M.S.'s best interest.[6]

## V. Conclusion

For the reasons set forth above, the decision of the Juvenile Court is AFFIRMED. Due to the indigency of Father, costs are assessed against DCS.

_____
RICHARD H. DINKINS, JUDGE

---

[6] The trial court noted that the relatives in Mexico were E.M.S.'s maternal grandparents who were themselves "persons of interest to the federal law enforcement investigation that has enveloped the parents"; that there was no proof that the medical treatment E.M.S. needs is available in Mexico and that, if it were, the grandparents have the ability "either financially or geographically" to access the needed care.