IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 1, 2018

# IN RE  HAYDEN L

**Appeal from the Juvenile Court for Sevier County**
**No. 17-000873        Jeffrey D. Rader, Judge**

_____

## No. E2018-00147-COA-R3-PT

_____

This is a termination of parental rights case.  Mother/Appellant appeals the trial court's termination of her parental rights to the minor child on the grounds of: (1) abandonment by an incarcerated parent by willful failure to visit, willful failure to support, and wanton disregard, Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(A)(iv); (2) severe child abuse, Tenn. Code Ann. § 36-1-113(g)(4); and (3) incarceration under a sentence of ten years or more imposed when the child was less than eight years old, Tenn. Code Ann. § 36-1-113(g)(6).  Mother also appeals the trial court's determination that termination of her parental rights is in the child's best interest.  On appeal, Appellee does not defend the ground of abandonment by willful failure to support.  Because there is insufficient evidence concerning Mother/Appellant's employment and earning potential, we reverse the trial court's termination of Mother/Appellant's parental rights on the ground of abandonment by willful failure to support.  The order is otherwise affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Reversed in Part, Affirmed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Elizabeth A. Brady, Sevierville, Tennessee, for the appellant, Tiffany P.

Herbert H. Slatery, III, Attorney General and Reporter; and Brian A. Pierce, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

## I. Background

Hayden L. was born to Appellant Tiffany P. ("Mother") in March of 2012.[1] In June 2016, the Tennessee Department of Children's Services ("DCS," or "Appellee") received a referral alleging that Hayden L. was drug exposed and the victim of environmental neglect. Child Protective Services ("CPS") Investigator, Raki Watson, found Hayden L. living in the maternal grandmother's home. CPS reported that there were five adults and three children (including Hayden) living in the home. The child's grandmother reported that Mother was not living in the home. CPS found that the electricity and water had been turned off and that there was no food in the home. Mr. Watson further observed that there was a foul odor in the home and that the adults appeared to be under the influence of narcotics. Hayden was removed from the maternal grandmother's home on June 27, 2016. As discussed below, Mother has had no contact with the child since that time.

By order of August 24, 2016, the Juvenile Court for Sevier County ("trial court") adjudicated Hayden to be dependent and neglected and placed temporary custody with the maternal aunt, Summer W. By the same order, the trial court held that Mother would have no contact with Hayden. Hayden remained in Summer W.'s home until March 2017. At that time, Summer W. informed DCS that she could no longer care for the child. On March 3, 2017, the trial court entered an order transferring custody of the child to DCS. Hayden was placed in foster care, where he has remained since that time.

In its March 3, 2017 order, placing custody with DCS, the trial court noted that the family had a long history with DCS. As is relevant to the instant appeal, in February 2011, Mother gave birth to Payton L., who is not the subject of this appeal. Shortly thereafter, DCS received a referral that Mother had exposed Payton to narcotics while she was pregnant. Payton, who was born prematurely, tested positive for Oxycodone and was removed from Mother's custody on March 10, 2011. By order of June 29, 2011, Payton was adjudicated dependent and neglected due to Mother's severe abuse by drug exposure. Mother's parental rights to Payton were terminated by order of January 12, 2012. On appeal, this Court affirmed the termination of Mother's parental rights to Payton. *In re: Payton A.D.L.*, No. E2012-00090- COA-R3-PT, 2012 WL 2336256 (Tenn. Ct. App. June 20, 2012). In *Payton*, we noted that "Mother concedes that clear and convincing evidence existed to establish the ground of severe child abuse based on her drug use while pregnant." 2012 WL 2336256, at *4, fn. 3. We further noted that,

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names so as to protect their identities.

"[a]t the time of the termination hearing [concerning Payton], Mother was seventeen weeks pregnant with another child [i.e., Hayden]. She admitted, however, that she continues to use methadone while pregnant, well aware of the risks that drug use poses to her unborn child." *Id.* at *3. "Despite Mother's efforts to overcome her struggle with drug addiction, she has been unable to complete the first of four phases of the treatment process since she began methadone treatment in June 2011." *Id.* at *3, fn. 2.

On June 26, 2017, the guardian ad litem, on behalf of DCS, filed a petition to terminate Mother's parental rights to Hayden. At the time of the filing of the petition, Mother was incarcerated for probation violation. By her own testimony, Mother was incarcerated from approximately June 21, 2017 until August 8, 2017. As grounds, the petition averred abandonment by an incarcerated parent by willful failure to visit, willful failure to support, and wanton disregard; failure to manifest an ability and willingness to assume legal and physical custody; severe abuse; and incarceration under a sentence of ten years or more when the child was under eight. At the hearing on the petition, DCS voluntarily non-suited the ground of failure to manifest an ability and willingness to assume legal and physical custody. Following the hearing, the trial court entered an order, on December 21, 2017, terminating Mother's parental rights on the remaining grounds and on its finding that termination of her rights is in the child's best interest.[2] Mother appeals.

## II. Issues

There are two dispositive issues, which we state as follows:

1. Whether there is clear and convincing evidence to support at least one of the grounds for termination of Appellant's parental rights.
2. If so, whether there is clear and convincing evidence to support the trial court's determination that termination of Appellant's parental rights is in the child's best interest.

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (Tenn. 1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7

---

[2] Father's parental rights to Hayden were terminated by the same order. Father did not file an appeal.

(Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. §§ 36-1-113(c); *In re D.L.B*., 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interest must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B*., 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*. at 653.

In view of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

## IV. Grounds for Termination of Parental Rights

As noted earlier, the trial court relied on the following statutory grounds in terminating Appellant's parental rights: (1) abandonment by an incarcerated parent by willful failure to visit, willful failure to support, and wanton disregard, Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(A)(iv); (2) severe child abuse, Tenn. Code Ann. § 36-1-113(g)(4); and (3) incarceration under a sentence of ten years or more imposed when the child was less than eight years old, Tenn. Code Ann. § 36-1-113(g)(6). Although only one ground must be proven by clear and convincing evidence in order to terminate a parent's rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Accordingly, we will review all of the foregoing grounds.

## A. Abandonment

We begin with the ground of abandonment generally. In this case, DCS alleged abandonment under Tennessee Code Annotated Section 36-1-113(g)(1), which provides that termination of a parent's rights may be initiated based on "[abandonment by the parent or guardian, as defined in § 36-1-102 . . . ." Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated section 36-1-102 outlines several definitions of "abandonment." As noted above, DCS filed its petition to terminate Mother's parental rights on June 26, 2017. It is undisputed that Mother was incarcerated from June 21, 2017 until August 8, 2017. Accordingly, the trial court relied on the following definition of abandonment:

> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

> (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv). In *In re Audrey S.*, this Court discussed willfulness in the context of termination of parental rights cases:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child . . . unless the parent has . . . "willfully" . . . failed to support the child for a period of four consecutive months. . . . In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing ....

- 5 -

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005) (internal citations and footnotes omitted). This Court has held that failure to pay support is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (quoting *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing In re Adoption of A.M.H., 215 S.W.3d at 810). As previously discussed, this Court reviews questions of law de novo with no presumption of correctness. *Id*.

The trial court found sufficient evidence to support the following types of abandonment against Mother: (1) abandonment by an incarcerated parent by willful failure to support, (2) abandonment by an incarcerated parent by willful failure to visit; and (3) abandonment by an incarcerated parent by wanton disregard.

### 1. Abandonment by Willful Failure to Support

Because Mother was incarcerated at the time DCS filed its petition to terminate her parental rights, the statutory definition of "abandonment" under Section 102(1)(A)(iv) requires us to focus on the "four (4) consecutive months immediately preceding the parent's or guardian's incarceration." As noted above, Mother was incarcerated from June 21, 2017 until August 8, 2017. Accordingly, with respect to the ground of abandonment by willful failure to support and visit, the relevant time period is February 21, 2017 to June 20, 2017.

A parent willfully fails to support her child when, for the relevant four month period, the parent fails to provide monetary support or fails to provide more than "token payments" toward the support of the child. Tenn. Code Ann. § 36-1-102(1)(D) (defining "willfully failed to support" and "willfully failed to make reasonable payments toward such child's support"). "Token support" is support that, considering the individual circumstances of the case, is "insignificant given the parent's means." *Id*. at (1)(B). Although it is undisputed that Appellant paid no support for Hayden during the relevant time period, in order to prove this ground, DCS also has the burden to show that Mother had the capacity to provide support. *In re. J.J.C.*, 148 S.W.3d at 926. As this Court recently explained:

It is axiomatic that "in order to establish the ground of abandonment by willful failure to support by clear and convincing evidence, the party seeking termination must generally 'submit ... evidence regarding [the parent's] employment, income, [or] other non-monetary assets,' as well as the parent's 'expenses during the four-month period.'" *In re Michael B*., No. M2015-02497-COA-R3-PT, 2016 WL 7486361, at *11 (Tenn. Ct. App. Oct. 6, 2016) (quoting *In re Destiny H*., No. W2015-00649-COA-R3-PT, 2016 WL 722143, at *9 (Tenn. Ct. App. Feb. 24, 2016)). Such evidence need not be an accounting of every dollar earned and spent, and it need not even be tied to dollars and cents, but it must be clear and convincing evidence that the parent had the capacity to pay support, did not do so, and had no justification for not doing so. In the case of *In re Adoption of Angela E*., 402 S.W.3d [636,] at 641 [(Tenn. 2013)], in the context of examining whether the father's payments were "token support," our Supreme Court stated that the evidence of the father's income and expenses was "limited at best" and failed to prove that his payments were "token support." *See also* **In re Michael B.**, 2016 WL 7486361, at *11 (discussing **In re Adoption of Angela E.** and other cases regarding proof of employment, income, other non-monetary assets, and expenses necessary to establish a parent's capacity to pay support).

*In re Preston L*., No. M2016-02338-COA-R3-PT, 2017 WL 4315356, at *5 (Tenn. Ct. App. September 27, 2017).

In its order terminating Mother's parental rights, the trial court made the following relevant findings concerning abandonment by willful failure to support:

> The Court [] finds that the Mother has failed to support this minor child . . . . The Court finds that this Mother has not supported this child or has made only token payments toward child support in the four (4) months immediately preceding her incarceration on June 21, 2017. . . . This Court notes that from the outset this Mother is healthy, capable and through her own testimony has the ability to support herself and pay some support even if it is a minimal amount. The Mother testified that she had worked several different jobs including one at a restaurant, this all having occurred since this minor child was removed from her custody.
>
> This Court specifically finds that the Mother's employment ended as she became pregnant and gave birth to another child. There is no indication in this record that the Mother operates under any type of disability or has any physical or mental limitations which the Court would be required to look to. To the contrary, the Mother's own testimony was that she in fact could work but had not paid any support. The Court further finds that the

mother knew how to make payments and had actually made some payments since the time the petition had been filed.

This Court finds that any amounts contributed by Mother in any form would amount only [] to token support and would not prevent this Court from making a finding that the mother has abandoned this child. . . .

In the first instance, any attempt of a parent to rectify abandonment by resuming payments once a petition for termination has been filed does not preclude DCS from seeking termination of parental rights. Tenn. Code Ann. 36-1-102(1)(F). Accordingly, Mother's attempt to pay child support after the petition was filed does not negate the trial court's reliance on the ground of abandonment by willful failure to support.

In its appellate brief, DCS states that "the Department does not defend the ground of failure to support." Despite DCS's choice not to defend the ground of abandonment by willful failure to support, under *In re Angela E.*, *supra*, this Court is charged to review each of the grounds the trial court relies on in terminating a parent's rights. Turning to the record, although there is proof that Mother is not disabled or otherwise precluded from gainful employment, to prove this ground, DCS has the burden to show, by clear and convincing evidence, that Mother not only "had the capacity to pay support [but] did not do so, [but also that she] had no justification for not doing so." *In re Preston L.*, 2017 WL 4315356, at *5. From our review of the record, DCS, as it concedes, did not meet this burden. Accordingly, we conclude that the trial court erred in terminating Mother's parental rights on the ground of abandonment by willful failure to support.

## 2. Abandonment by Willful Failure to Visit

It is undisputed that Mother did not visit Hayden in the four months before her incarceration. In fact, Mother testified that she last saw the child in June 2016. However, as discussed above, on August 24, 2016, the trial court entered a no contact order barring Mother from having contact with Hayden. In relevant part, the no contact provisions of the order provide:

[Mother] shall have no contact with the child/children, including no personal contact, no telephone calls, no electronic or written messages, and no messages through third parties. This injunction order shall remain in effect until the child/children reach the age of 18 or until this order is modified by this Court.

\*\*\*

This case is closed. In order to modify the Court's final orders regarding

visitation, custody, or any other matter, the Respondent [i.e., Mother] must petition the Court to reopen the case and provide proper notice to [DCS]. The Respondent must also provide proof to [DCS] and to the Court that [she has] complied with all services requested by DCS in the petition and other order of this Court . . . .

In view of the no contact order, the question is whether Mother's failure to visit constitutes a **willful** failure to visit for purpose of terminating her parental rights. Where the failure to visit is not willful, it does not constitute abandonment. ***In re Adoption of A.M.H.***, 215 S.W.3d 793, 810 (Tenn. 2007). A parent who attempts to visit and maintains a relationship with the child, but is "thwarted by the acts of others and circumstances beyond [her] control," cannot be found to have willfully abandoned the child. ***Id.*** However, it is well-settled that a trial court's order requiring that a parent complete some task or meet a condition before resuming visitation does not preclude a finding of willfulness. "This Court has often held that when a parent's visitation has been suspended by the trial court and the parent has the ability to demonstrate a change in situation or behavior that would warrant reinstating visitation but fails to do so, that parent can be found to have willfully failed to visit." ***In re Kiara C***., No. E2013-02066-COA-R3-PT, 2014 WL 2993845 (Tenn. Ct. App. June 30, 2014) (citing ***In re Elijah B***., E2010-00387-COA-R3-PT, 2010 WL 5549229, at *8 (Tenn. Ct. App. Dec. 29, 2010)). Furthermore, this Court has specifically opined that when a parent chooses not to cooperate with certain conditions, such as obtaining a drug and alcohol abuse assessment, that choice "in refusing to cooperate [ ] constitute[s] a willful decision" to discontinue visitation. ***State Dept. of Children's Servs. v. J.A.H***., No. E2005-00860-COA-R3-PT, 2005 WL 3543419, at *6 (Tenn. Ct. App. Dec. 28, 2005). As set out in context above, the no contact order clearly states that Mother may petition to set the no contact order aside, with the only conditions being that she provide proper notice to DCS and show proof that she is complying with the services/requirements deemed necessary for reunification with the child. During her testimony, Mother admitted that she was aware that she had to petition the trial court to set aside the no contact order, but that she never filed a petition:

> Q [to Mother]: So you said you got a [copy of the no contact order], are you saying you got a copy of the court order?
>
> A. I did, yes.
>
> Q. . . . and did you see the box at the end that said you had to re-petition the Court?
>
> A. Yes. . . .

Q. –between August the 24th of 2016 and when he came into custody in March of this year, did you file anything to have contact with him . . . .

A. I'm sorry. I think we have asked for it in Court. . . .

Despite Mother's admission that she understood that she was required to petition the trial court in order to lift the no contact order so as to visit Hayden, Mother did not, in fact, ensure that such petition was filed. In view of the undisputed fact that Mother has had no contact with Hayden since June 2016 and has taken no overt steps to petition the trial court to set aside or modify the no contact order, there is clear and convincing evidence that she has abandoned the child by willful failure to visit.

### 3. Abandonment by Wanton Disregard

The trial also court found that Mother abandoned Hayden by wanton disregard. As defined at Tennessee Code Annotated Section 36-1-102(1)(A)(iv), abandonment, as a ground for termination of a parent's rights, may be established if "the parent . . . has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child." Tenn. Code Ann. § 36-1-102(1)(A)(iv). Although the statute does not define "wanton disregard," this Court has explained that

> [i]ncarceration alone is not conclusive evidence of wanton conduct prior to incarceration. *In re Audrey S.*, 182 S.W.3d 838, 866 (Tenn. Ct. App. 2005). Rather, "incarceration serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *Id*. The statutory language governing abandonment due to a parent's wanton disregard for the welfare of a child "reflects the commonsense notion that parental incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child" and recognizes that a "parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child." *Id*.

*In re C.A.H.*, No. M2009-00769-COA-R3-PT, 2009 WL 5064953, at *5 (Tenn. Ct. App. Dec. 22, 2009). We further note that the ground of abandonment by wanton disregard does not require that the conduct at issue occur within the four months prior to incarceration. *In re Audrey S.*, 182 S.W.3d at 865 ("This test has no analog to the first statutory definition of abandonment [i.e., abandonment by willful failure to visit or support], and it is not expressly limited to any particular four-month period."). Rather,

Tennessee courts may consider the parent's behavior throughout the child's life, even when the child is in utero. *See In re A.B.*, No. E2016-00504-COA-R3-PT, 2017 WL 111291, at *10 (Tenn. Ct. App. Jan. 11, 2017). In short, "[t]he actions that our courts have commonly found to constitute wanton disregard reflect a 'me first' attitude involving the intentional performance of illegal or unreasonable acts and indifference to the consequences of the actions for the child." *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015).

In its order terminating Mother's parental rights, the trial court made the following relevant findings concerning abandonment by wanton disregard:

> The Court specifically finds as it relates to this ground, that this Mother was incarcerated at the time of the filing of the petition and has a lengthy criminal history. The Mother has demonstrated conduct that clearly evidences her wanton disregard for the wellbeing of this child . . . . The Mother testified as to her lengthy history of drug abuse including the use of Methamphetamine, Oxycodone, Hydrocodone and other opioids. There is clear and convincing proof in this record of Mother's serious criminal behavior where she has been convicted on numerous occasions for violating numerous criminal statutes . . . . The Court notes that there are convictions from 2015 which carry an effective sentence to this Mother of ten (10) years. Specifically the Court finds the Mother was convicted of initiating the manufacture of methamphetamine, reckless endangerment, and escape. Further the Court notes that the reckless endangerment conviction was originally charged as a Class A Felony of Aggravated Child Abuse and Neglect. This Court would note that this child, Hayden, was the victim of this crime.
>
> Other proof was offered as to convictions received by the Mother for various criminal acts some time in 2012. As recent[ly] as June of 2017, this Mother was arrested for violating probation due to convictions received in Jefferson County, Tennessee. Specifically the Mother had failed drug screens as recently as March of 2017. The Court also notes that this Mother has previously been found to have severely abused a prior child [i.e., Payton], that child having been born with neonatal abstinence syndrome similar to that of this child Hayden. Clearly these acts of this Mother evidence a long standing disregard for the well-being of this child.
>
> The Mother continues to exhibit repeated behaviors throughout the years and life of this minor child. Her actions have placed this child in grave danger and will surely cause long term effects which may be unknown for many years. This Mother has a history of failing to properly parent, substance abuse, unemployment, homelessness and many other characteristics which completely call for a finding of wanton disregard for this minor child. Therefore, this Court finds by clear and convincing

evidence that this Mother has abandoned the minor child . . . as she has demonstrated a wanton disregard for this child's well-being by her incarceration and criminal acts.

The evidence supports the trial court's findings. Without extending the length of this opinion to list each of Mother's crimes and each probation violation, suffice it to say that her criminal record is prolific. Particularly troubling is the manufacture of methamphetamine and endangerment charges because Hayden was in the house where the drugs were being made. Mother has repeatedly violated the terms of her parole and has extended her criminal record by engaging in additional illegal activities while this case was pending.

Aside from her criminal record, during her testimony, Mother readily admitted that she continued to take drugs during her pregnancy with Hayden despite the fact that she had lost custody of her first child by the same action. Mother's testimony further shows that her addiction is ongoing, and the evidence indicates that despite some effort to abstain, Mother has been unable to thwart her addiction for any significant length of time. Mother's addiction has negated her ability to parent Hayden. She has been largely absent from his life, and has left him in the care of relatives, who also suffer from addiction issues. From the totality of the circumstances, we conclude that there is clear and convincing evidence to support the trial court's termination of Mother's parental rights on the ground of abandonment by wanton disregard.

### B. Severe Child Abuse

The trial court also relied on the ground of severe child abuse to terminate Mother's parental rights. Tennessee Code Annotated section 36-1-113(g)(4), provides that a parent's rights may be terminated when:

> (4) The parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child[.]

As referenced in section 36-1-113(g)(4), Tennessee Code Annotated section 37-1-102(22) defines "severe child abuse," in relevant part, as follows:

> "Severe child abuse" means:
> (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;

- 12 -

In *In re Benjamin M.*, this Court specifically held "that severe child abuse can result from prenatal drug use." *In re Benjamin M.¸* 310 S.W.3d 844, 848 (Tenn. Ct. App. 2009), *perm. app. denied* (Tenn. March 15, 2010) (relying on *In re C.T.S.*, 156 S.W.3d 18 (Tenn. Ct. App. 2004); *In re M.J.J.*, No. M2004-02759-COA-R3-PT, 2005 WL 873305 (Tenn. Ct. App. April 14, 2005)). As noted above, "[o]n June 29, 2011, the juvenile court . . . found that Mother severely abused Payton by exposing him to drugs while she was pregnant . . . ." *Payton*, 2012 WL 2336256, at *2. The order by which Mother was found to have committed severe child abuse was entered on June 29, 2011. Mother had the right to appeal that ruling; however, she did not. Therefore, the order finding that Mother committed severe child abuse became final. Under the doctrine of *res* judicata, when there is a final judgment on the merits, by a court of competent jurisdiction, that ruling is conclusive of rights, questions and facts in issue as to the parties. *Galbreath v. Harris*, 811 S.W.2d 88, 90 (Tenn.Ct.App.1990). Because the order adjudicating Mother to have severely abused Hayden's sibling, Payton, is a final judgment, the trial court (in this termination of parental rights proceeding) found, by clear and convincing evidence, that Mother committed severe child abuse. Accordingly, we affirm the trial court's termination of Mother's parental rights on the ground of severe child abuse.

### C. Incarceration Under a Sentence of Ten Years or More Imposed When the Child Was Less Than Eight Years Old

In terminating Mother's parental rights, the trial court also relied on the ground set out in Tennessee Code Annotated section 36-1-113(g)(6), which provides that a parent's rights may be terminated if

> [t]he parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court[.]

In its order terminating Mother's parental rights, the trial court made the following relevant findings concerning this ground:

> The Court now finds pursuant to T.C.A. §36-1-113(g)(6) that the Mother has received "a sentence of ten (10) years or more at the time when the minor child was under the age of eight (8)."
> Specifically the Court notes that collective Exhibit 10 indicates this Mother was convicted on September 12, 2016, of initiating the manufacture of methamphetamine. At that time pursuant to the judgment, the Mother received a sentence of eight (8) years to serve in the custody of the Department of Correction[] with the incarceration being suspended to supervised probation. Further, on that same date, September 12, 2016, the

Mother was convicted of escape. The judgment indicates the Mother received a two (2) year sentence in the custody of the Department of Correction[] this sentence being consecutive to the eight (8) year sentence set forth above.

It is uncontroverted that this minor child was only four (4) years old at the time the Mother received these sentences. There does not seem to be any dispute as to the proof as it relates to this particular ground. The Mother, through her own testimony, acknowledged the convictions, the sentences, and their lengths, without dispute. The Court therefore finds by clear and convincing evidence that the Mother has been convicted of criminal acts under a sentence of ten (10) years and that the minor child was under the age of eight (8) at the time of the imposition of the sentence. The requisites as provided for in T.C.A. § 36-1-113 are proven by clear and convincing evidence. The Court therefore finds that this ground serves as a ground to terminate the Mother's rights.

In the instant case, it is undisputed that, although Mother received a sentence of ten years, she was not initially incarcerated under that sentence. Rather, Mother was granted probation in lieu of confinement. However, the record shows that Mother subsequently violated the terms of her probation, which resulted in imprisonment.

This court has "repeatedly recognized that a court considering a petition for termination of parental rights based on Tennessee Code Annotated section 36-1-113(g)(6) need not look beyond the judgment of conviction and the sentence imposed by the criminal court in order to determine whether this ground for termination applies." *In re Audrey S*., 182 S.W.3d at 876 (citations omitted). It does not matter that Mother served less than ten years; we only look at the length of the sentence and age of the child at sentencing. *See In re D.M*., No. M2009-00340-COA-R3-PT, 2009 WL 2461199, at *3 (Tenn. Ct. App. Aug.12, 2009) (terminating parental rights of father based on Tenn. Code Ann. § 36-1-113(g)(6) even though he had completed his ten year sentence). As this Court held in *In re Chandler M.*, No. M2013-02455-COA-R3-PT, 2014 WL 3586499 , at *7 (Tenn. Ct. App. July 21, 2014), *perm. app. dismissed* (Tenn. Sept. 29, 2014):

While the statute [i.e., Tenn. Code Ann. § 36-1-113(g)(6)] requires some period of confinement, the legislature did not expressly provide that the actual period of confinement must amount to 10 or more years. We decline to insert such a meaning into the statute when the obvious intention of the statute was to achieve permanency for children whose parents are subjected to the possibility of lengthy prison sentences

Based on Mother's probation violation and subsequent incarceration under a sentence of ten years while the child was under the age of eight, we conclude that there is clear and convincing evidence to support this ground for termination of her parental rights.

## V. Best Interests

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004). When a parent has been found to be unfit (upon establishment of ground(s) for termination of parental rights), the interests of parent and child diverge. *In re Audrey S.*, 182 S.W.3d at 877. The focus shifts to the child's best interest. *Id.* at 877. Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest. *Id*. However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). Further, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *White*, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to the instant case, these factors include, but are not limited to, the following:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> ***
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child.
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
>
> ***
>
> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines . . . ;

Tenn. Code Ann. § 36-1-113(i). This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best

interest of a child." ***In re M.A.R***., 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. ***In re Audrey S.***, 182 S.W.3d at 877. As explained by this Court:

> Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. §§ 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

***White***, 171 S.W.3d at 194.

In its order terminating Appellant's parental rights, the trial court made the following findings concerning the child's best interest:

> The Court specifically finds that this Mother . . . [has] made no changes in [her] individual conduct or circumstances that would make it safe for this minor child to go home. Mother has continued to have problems with stability and in demonstrating a dedication to sobriety due to her use of illegal drugs, un-prescribed drugs, and criminal activity. . . . The Mother has tested positive for Hydrocodone and Opiates as recently as March of [2017], and plead guilty to the manufacture of methamphetamine.

Mother's own testimony supports the trial court's finding. In relevant part, Mother testified that she last used illicit drugs in March 2017. Mother candidly testified that she had not been able to stay sober consistently and that she has continued to engage in illegal activities during the pendency of this case. Mother is currently living with her fiancé (although she admits that she is still legally married to Hayden's father). Since Hayden's removal to state custody, Mother has given birth to another child, and at the time of the hearing on the petition to terminate her parental rights, Mother was pregnant with a fourth child. From the record, drug use and criminal activity prevail in the home, and there is no indication that Mother's current living situation is in Hayden's best interest. In fact, there is evidence that Mother's environment would pose substantial risk to the child's physical and mental welfare.

The trial court further noted Mother's failure to support and to visit Hayden. These findings are well established in the record. Mother testified that she has had no contact with the child since June 2016 and further admitted that she has made no payments toward the child's support.

- 16 -

The record clearly shows that Hayden is thriving in his current foster placement. The foster father specifically testified that, although Hayden had severe adjustment issues at first (i.e., nightmares and sleeping problems), through therapeutic sessions, the child has overcome these initial issues and is now well-adjusted. Hayden's DCS caseworker, Tiffany Robbins, corroborated the foster father's testimony, stating that Hayden is very bonded with the foster family. Both the foster father and Ms. Robbins testified that Hayden never asks about Mother and, when asked, indicates that he does not care about seeing her. Hayden continues with therapy, which the foster parents ensure he attends. To remove him from the only stable home he has ever known, would likely cause Hayden severe psychological and emotional trauma. From the totality of the circumstance, there is clear and convincing evidence to support the trial court's finding that termination of Mother's parental rights is in the child's best interest.

### VI. Conclusion

For the foregoing reasons, we reverse the trial court's termination of Mother's parental rights on the ground of abandonment by willful failure to support. We affirm the trial court's termination of Mother's parental rights on the remaining grounds and on its finding that termination of Mother's parental rights is in the Children's best interests. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to Appellant, Tiffany P. Because Tiffany P. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE