IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 3, 2020

## IN RE TRINITY H.

**Appeal from the Juvenile Court for Macon County
No. 2019-JV-203      Ken Witcher, Judge**

_____

### No. M2020-00440-COA-R3-PT

_____

This appeal concerns the termination of a father's parental rights.  The Tennessee Department of Children's Services ("DCS") filed a petition in the Juvenile Court for Macon County ("the Juvenile Court") seeking to terminate the parental rights of James H. ("Father") to his minor daughter Trinity H. ("the Child").  After a trial, the Juvenile Court entered an order terminating Father's parental rights on the grounds of wanton disregard, severe child abuse, and failure to manifest an ability and willingness to assume custody. The Juvenile Court found also that termination of Father's parental rights is in the Child's best interest.  Father appeals.  With respect to wanton disregard, the Juvenile Court found only that Father committed criminal acts resulting in his incarceration, which by itself is insufficient to establish the ground.  We, therefore, vacate the ground of wanton disregard. However, we find that the other two grounds were proven by clear and convincing evidence and, by the same standard, that termination of Father's parental rights is in the Child's best interest.  We vacate, in part, and affirm, as modified.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated, in Part, and Affirmed, as Modified

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ANDY D. BENNETT and CARMA DENNIS MCGEE, JJ., joined.

Michael J. Rocco, Sparta, Tennessee, for the appellant, James H.

Herbert H. Slatery, III, Attorney General and Reporter, and Amber L. Seymour, Assistant Attorney General, for the Tennessee Department of Children's Services.

## OPINION

## Background

In March 2019, the Juvenile Court entered an order finding that Father committed severe child abuse against two of the Child's siblings stemming from Father's failure to protect these children from drug exposure while their mother was pregnant. The Juvenile Court found, in part: "[S]pecifically that [Father] made admissions that he knew the mother was using opiates, he has spent extended periods of time in jail with the reasons based upon drug use, and while the children lived with him the children were exposed to the drugs that [the children] had in their system; therefore, he knowingly failed to protect the [children] from abuse."

The Child, subject of this present appeal, was born in June 2019. DCS received a referral that she, too, was drug-exposed. The Child tested positive for amphetamine and methamphetamine. On June 11, 2019, the Child was removed into DCS custody. On June 27, 2019, Father was arrested and charged with probation violation, possession of a Schedule II controlled substance, possession of a Schedule VI controlled substance, and possession of drug paraphernalia. On November 7, 2019, the Child was adjudicated dependent and neglected due to her drug exposure and Father's lack of housing.

On November 25, 2019, DCS filed a petition in the Juvenile Court seeking to terminate Father's parental rights.[1] DCS alleged grounds of abandonment by wanton disregard, severe child abuse, and failure to manifest an ability and willingness to assume custody. The petition was tried in February 2020.

Before hearing testimony, the Juvenile Court noted Father's absence. Father had been released from jail the day before trial. The Juvenile Court stated that, at a December court appearance, it personally had informed Father of his February court date. Father's counsel stated that he had not heard from Father since his last court date and asked for a continuance, which was denied. Trial proceeded, and DCS called two witnesses to testify. Father called none.

First to testify was Lindsay Kenyon ("Ms. Kenyon"), the Child's case manager. According to Ms. Kenyon, Father committed crimes knowing that he would end up in jail and thus be unable to parent the Child. In February 2019, Father pled guilty to assault and violation of probation. In June 2019, he was arrested again. Ms. Kenyon testified: "[Father] has not completed anything identified on the permanency plan. It's unknown

---

[1] The Child's mother surrendered her parental rights to the Child. This appeal concerns only Father's parental rights.

about his drug abuse or continuation of, he's not had any alcohol and drug treatment. His mental health has been a concern with domestic violence issues and no mental health treatment." Ms. Kenyon testified further: "To my knowledge, [Father] does not have housing or a way to support himself or the child."

Continuing her testimony, Ms. Kenyon stated that Father saw the Child in the hospital and later saw a photograph of the Child. Ms. Kenyon testified that in August 2019, Father was advised of and given a copy of the criteria and procedure for termination of parental rights. In January 2020, Ms. Kenyon visited Father in jail and gave him another copy, as well. Asked whether Father had made any adjustment of circumstance, Ms. Kenyon stated that he had not: "Because of his incarceration. Also, he has not maintained a relationship with the child, his mental health, his alcohol and drug, his housing, parenting ability, and his income." When asked about DCS's efforts, Ms. Kenyon testified:

> In the jail, we're very limited. I did meet with him at the jail at least every three months to go over the permanency plan with him. We discussed if he were to get out for him to contact me within 24 hours, I would set up his visitation, and also set up the identified assessments. The assessment that we identify that he need [SIC], the full psychological, I don't know of any providers that would come into the jail. We have looked into that.

Ms. Kenyon stated that there was no meaningful relationship between Father and the Child. Ms. Kenyon testified, on the other hand, that the Child was "very much" bonded with her foster family. Ms. Kenyon stated that she was not aware of Father ever having addressed his substance abuse issues. When asked why she believed Father required mental health treatment, Ms. Kenyon answered: "Because there's a long history with the Department of Children's Services in his previous case with the other children in which he did not seek the help that he needed. He did have a mental health assessment in that previous case, and he never followed up on the recommendations." As to whether Father had ever shown any genuine interest in the Child, Ms. Kenyon stated: "During the times that I met with him at the jail, he spoke verbally of wanting to get to know her, and when he got out, he would like a chance to parent her, but other than just verbal communication, no."

On cross-examination, Ms. Kenyon acknowledged that Father had only 16 or 17 days out of jail to work on his permanency plan. Ms. Kenyon acknowledged also that the severe child abuse finding was based not on conduct against the Child, but rather her siblings. Asked if Father could complete his permanency plan requirements while in jail, Ms. Kenyon stated: "Not that I'm aware of." Ms. Kenyon testified:

-3-

A mental health assessment, he could have while he was in jail; however, he had already previously had a mental health assessment. We identified that that obviously did not help in the last case, so we felt like he needed a full psychological in which they do more extensive testing, such as IQ. And so, we do not have an assessor who could do a full psychological assessment on him to come to the jail.

Ms. Kenyon testified also that Father had inquired about making video calls to the Child. In the following exchange, Ms. Kenyon was asked about the relatively short amount of time between the date the Child entered DCS custody and the date DCS filed its petition to terminate parental rights:

Q. Okay. And we've already established that the child entered custody on June the 11th, correct?
A. Yes.
Q. Okay. So, that means that the TPR petition was filed roughly five months after the case opened, correct?
A. Yes.
Q. Okay. How long does DCS typically allow parents to work a permanency plan prior to filing TPRs?
A. I know that we provide reasonable efforts for four months; however, in some severe abuse cases, we file earlier than that.
Q. But isn't it also true that the child typically has to be in the foster home for six months prior to adoption?
A. Yes.
Q. Okay. So, then the TPR was filed prior to that six-month mark?
A. Yes.

Next and last to testify was Jennifer R. ("Foster Mother"), the Child's maternal great aunt and foster mother. Foster Mother testified that she wanted to adopt the Child. When asked how she felt about the Child, Foster Mother testified: "I love her to death. She's part of my family." According to Foster Mother, the Child called her "Ma-ma" and her husband "Da-da." Foster Mother testified that she had a strong bond with the Child and that the Child needs permanency.

In February 2020, the Juvenile Court entered an order terminating Father's parental rights to the Child. The Juvenile Court found that all three grounds for termination alleged by DCS had been proven by clear and convincing evidence: abandonment by wanton disregard, severe child abuse, and failure to manifest an ability and willingness to assume custody. The Juvenile Court found also by clear and convincing evidence that termination

of Father's parental rights is in the Child's best interest. In its order, the Juvenile Court stated, in part, as follows:

> The Court found all of the State's witnesses to be credible.
>
> The Court finds that the State of Tennessee, Department of Children's Services has proven by clear and convincing evidence that grounds for termination of parental rights exist based upon the following findings of fact.
>
> The State has alleged three grounds for termination of parental rights, the first of which is abandonment by wanton disregard. Tenn. Code Ann. § 36-1-113(g)(1) sets out abandonment as a ground for termination of parental rights and abandonment is defined at Tenn. Code Ann. § 36-1-102(1)(A)(iv) as a parent is incarcerated at the time of the institution of the action or proceeding to declare a child abandoned. The proof has shown that [Father] was incarcerated when the petition to terminate parental rights was filed on November 25, 2019. He was incarcerated from June 27, 2019 until yesterday, February 3, 2020. Then the statute goes on to say that the parent has either failed to visit or failed to support, has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.
>
> The Court finds that the State has established this ground of abandonment by wanton disregard prior to incarceration. [Father] voluntarily committed the criminal acts that he engaged in with the result that he was incarcerated. His incarceration made him unavailable to parent his child, showing a wanton disregard for the welfare of his child.
>
> The second ground alleged by the State is found at Tenn. Code Ann. § 36-1-113(g)(4), and states that the parent has been found to have committed severe child abuse under any prior order of a court. The State has submitted a certified copy of the decree in the case involving [B. H.] and [P. D.]. That is exhibit number nine filed on March 1, 2019. That order stated that the Court finds by clear and convincing evidence that the children, [B. H.] and [P. D.], are victims of sever[e] child abuse as defined by Tenn. Code Ann. § 37-1-102. It goes on more specifically and sets out that the children tested positive for various drugs and finds that [Father] made admissions that he knew that the mother was using opiates. Therefore, the order clearly establishes that [Father] committed severe child abuse upon two other children that are siblings to the child in question. So the Court finds that ground is established by clear and convincing evidence.
>
> The third ground alleged is failure to manifest an ability and willingness to assume custody found at Tenn. Code Ann. § 36-1-113(g)(14). The Court finds, based upon the proof, that the state has established that ground by clear and convincing evidence. [Father] basically has done nothing to show an ability or willingness to assume legal and physical

custody of the child and placing the child in his custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

The Court finds that the State of Tennessee, Department of Children's Services has proven by clear and convincing evidence that termination of parental rights is in the best interest of the [child] based upon the following findings of fact.

Tenn. Code Ann. § 36-1-113(i) requires that the Court look at all of the best interest factors listed. The first factor is whether the parent has made an adjustment of circumstances to make it safe and in the child's best interest to be in the parent's home. [Father] has done nothing, he has been in jail the whole time that the child has been in foster care. He has no home for this child to go to. This factor weighs in favor of terminating parental rights.

As to the second factor, whether the parent has made a lasting adjustment, the proof is that [Father] has done nothing but stay in jail for the entire time that the child has been in foster care. This factor weighs in favor of terminating parental rights.

The third factor deals with visitation. The proof is that the father has had no visitation with the child. This factor weighs in favor of terminating parental rights.

The fourth factor looks to whether there is a meaningful relationship between the father and the child. The Court finds that there is no relationship between the father and the child. This factor weighs in favor of terminating parental rights.

The fifth factor considers the effect a change in caretakers would have on the child. The proof is that the child is in a good and loving home. The child is very bonded to the foster parents. Changing caretakers at this point would have a very detrimental effect on this child. This factor weighs in favor of terminating parental rights.

The sixth factor considers whether the parent has shown neglect or abuse toward the child or other children in the family or household. The Court has already found that the father committed severe child abuse towards the child's siblings. This factor weighs in favor of terminating parental rights.

The seventh factor looks to the whether the parent's home is healthy and safe. The father was released from jail yesterday and he has not provided any proof to anyone that he has a home for the child. This factor weighs in favor of terminating parental rights.

The eighth factor looks at whether the parent's mental or emotional status would be detrimental to the child. There has been testimony that the father needs mental health treatment that he has not yet received. This factor weighs in favor of terminating parental rights.

The last factor is whether the parent has paid child support. The proof is that the father has paid no child support. This factor weighs in favor of terminating parental rights.

Thus the Court finds that the Tennessee Department of Children's Services has proven by clear and convincing evidence that grounds for termination of parental rights exist and has proven by clear and convincing evidence that it is in the best interest of the child that all the parental rights of [Father] to [the Child] be forever terminated; and therefore the complete custody, control, and guardianship of said child be awarded to the State of Tennessee, Department of Children's Services, with the right to place said child for adoption and to consent to said adoption in loco parentis.

Father timely appealed to this Court.

## **Discussion**

Although not stated exactly as such, Father raises the following issues on appeal: 1) whether the Juvenile Court erred in finding the ground of abandonment by wanton disregard; 2) whether the Juvenile Court erred in finding the ground of failure to manifest an ability and willingness to assume custody; and, 3) whether the Juvenile Court erred in finding that termination of Father's parental rights is in the Child's best interest.

As our Supreme Court has instructed regarding the standard of review in parental rights termination cases:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions.[2] *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae*

---

[2] U.S. Const. amend. XIV § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."). Similarly, article 1, section 8 of the Tennessee Constitution states "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250. "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." *Santosky*, 455 U.S. at 759, 102 S.Ct. 1388. "Few consequences of judicial action are so grave as the severance of natural family ties." *Id.* at 787, 102 S.Ct. 1388; *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 119, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). The parental rights at stake are "far more precious than any property right." *Santosky*, 455 U.S. at 758-59, 102 S.Ct. 1388. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of "severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(*l*)(1); *see also Santosky*, 455 U.S. at 759, 102 S.Ct. 1388 (recognizing that a decision terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754, 102 S.Ct. 1388; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (discussing the due process right of parents to fundamentally fair procedures).

Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof – clear and convincing evidence. *Santosky*, 455 U.S. at 769, 102 S.Ct. 1388. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

Tennessee statutes governing parental termination proceedings incorporate this constitutionally mandated standard of proof. Tennessee Code Annotated section 36-1-113(c) provides:

Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
(2) That termination of the parent's or guardian's rights is in the best interests of the child.

This statute requires the State to establish by clear and convincing proof that at least one of the enumerated statutory grounds[3] for termination exists and that termination is in the child's best interests. *In re Angela E.*, 303 S.W.3d at 250; *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *In re Angela E.*, 303 S.W.3d at 254. Although several factors relevant to the best interests analysis are statutorily enumerated,[4] the list is illustrative, not exclusive. The parties are free to offer proof of other relevant factors. *In re Audrey S.*, 182 S.W.3d at 878. The trial court must then determine whether the combined weight of the facts "amount[s] to clear and convincing evidence that termination is in the child's best interest." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). These requirements ensure that each parent receives the constitutionally required "individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away." *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999).

Furthermore, other statutes impose certain requirements upon trial courts hearing termination petitions. A trial court must "ensure that the hearing on the petition takes place within six (6) months of the date that the petition is filed, unless the court determines an extension is in the best interests of the child." Tenn. Code Ann. § 36-1-113(k). A trial court must "enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." *Id*. This portion of the statute requires a trial court to make "findings of fact and conclusions of law as to whether clear and convincing evidence establishes the existence of each of the grounds asserted for terminating [parental] rights." *In re Angela*

---

[3] Tenn. Code Ann. § 36-1-113(g)(1)-(13).
[4] Tenn. Code Ann. § 36-1-113(i).

*E.*, 303 S.W.3d at 255. "Should the trial court conclude that clear and convincing evidence of ground(s) for termination does exist, then the trial court must also make a written finding whether clear and convincing evidence establishes that termination of [parental] rights is in the [child's] best interests." *Id.* If the trial court's best interests analysis "is based on additional factual findings besides the ones made in conjunction with the grounds for termination, the trial court must also include these findings in the written order." *Id.* Appellate courts "may not conduct de novo review of the termination decision in the absence of such findings." *Id.* (citing *Adoption Place, Inc. v. Doe*, 273 S.W.3d 142, 151 & n.15 (Tenn. Ct. App. 2007)).

### B. Standards of Appellate Review

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d 507, 521-24 (Tenn. 2016) (footnotes in original but renumbered). Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Father has not challenged one of the grounds found against him—that of severe child abuse. Our Supreme Court, however, has instructed "that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests,

regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d at 525-26 (footnote omitted). Therefore, we will review the ground of severe child abuse, as well.

We first address whether the Juvenile Court erred in finding the ground of wanton disregard. Wanton disregard is a type of abandonment. Tenn. Code Ann. § 36-1-113 states, as pertinent:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and nonexclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred; …

Tenn. Code Ann. § 36-1-113(g)(1) (Supp. 2019).[5]

Tenn. Code Ann. § 36-1-102 sets forth the relevant definition of abandonment as follows:

> As used in this part, unless the context otherwise requires:
> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> ***
>
> (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has failed to visit or has failed to support or has failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child….

---

[5] DCS filed its petition on November 25, 2019. We apply the version of the statute, and the others cited herein, as they were in effect on that date.

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (Supp. 2019).

In *In re Audrey S.*, this Court discussed and elaborated upon what sort of conduct constitutes wanton disregard:

> Tenn. Code Ann. § 36-1-102(1)(A)(iv) also reflects the commonsense notion that parental incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child. Incarceration severely compromises a parent's ability to perform his or her parental duties. A parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child. *Taxonomy of Children's Rights*, 11 WM. & MARY BILL RTS. J. at 958. However, parental incarceration is not an infallible predictor of parental unfitness. Accordingly, Tenn. Code Ann. § 36-1-102(1)(A)(iv)'s second test for abandonment does not make incarceration alone a ground for the termination of parental rights. An incarcerated or recently incarcerated parent can be found guilty of abandonment only if the court finds, by clear and convincing evidence, that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child. Thus, the parent's incarceration serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child.

> \*\*\*

> We have repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child. *See, e.g., State Dep't of Children's Servs. v. J.M.F.*, No. E2003-03081-COA-R3-PT, 2005 WL 94465, at \*7-8 (Tenn. Ct. App. Jan.11, 2005), *perm. app. denied* (Tenn. Mar. 21, 2005); *In re C. LaC.*, No. M2003-02164-COA-R3-PT, 2004 WL 533937, at \*7 (Tenn. Ct. App. Mar. 17, 2004) (No Tenn. R. App. P. 11 application filed); *In re C.T.S.*, 156 S.W.3d 18, 25 (Tenn. Ct. App. 2004); *In re C.W.W.*, 37 S.W.3d at 474-75.

*In re Audrey S.*, 182 S.W.3d 838, 866-68 (Tenn. Ct. App. 2005) (footnote omitted).

In his appellate brief, Father points out correctly that incarceration alone is an insufficient basis for establishing the ground of wanton disregard. To recap, the Juvenile Court found as to this ground: "[Father] voluntarily committed the criminal acts that he engaged in with the result that he was incarcerated. His incarceration made him unavailable to parent his child, showing a wanton disregard for the welfare of his child." Father would appear to have a good point as to the insufficiency of the Juvenile Court's findings as to this ground.

Nevertheless, DCS points to the case of *In re Chyna L.M.D.*, No. E2012-00661-COA-R3-PT, 2012 WL 3776699 (Tenn. Ct. App. Aug. 31, 2012), *Rule 11 appl. perm. appeal denied Nov. 14, 2012* for the proposition that a parent's voluntary behavior that leads to incarceration, and thus unavailability to parent, can form a basis for finding wanton disregard. In *In re Chyna L.M.D.*, a father facing prison was under consideration for Enhanced Probation and the Community Alternatives to Prison Program (CAPP). *Id*. at *2. However, the father behaved in a such a way at a court appearance that his offers were withdrawn. *Id*. The trial court, in finding the ground of wanton disregard, stated in part:

> 6. [Father] may not have known that his girlfriend was pregnant with his child prior to his arrest for violation of probation in March 2009. He certainly knew that this was possible. He was well aware of the natural consequences of unprotected sex and the likely outcome. On July 1, 2009, the day of his hearing in Criminal Court, he certainly knew that [the Child's mother] was carrying his child. He remembers talking to the infant and patting the child while "in the mother's stomach." He knew that he was facing a sentence of more than seven years imprisonment (taking into account his previous jail credits) and that any opportunity he might have to participate in raising his child depended upon remaining in the community. He nevertheless behaved in such a manner that he lost his acceptance into Enhanced Probation, he lost his acceptance into CAPP, and he was sent directly [to] prison.

*In re Chyna L.M.D.*, 2012 WL 3776699, at *2. On appeal to this Court, the father challenged the trial court's finding of wanton disregard. *Id*. at *3. In affirming, we stated:

> The Trial Court found by clear and convincing evidence that Father had exhibited a wanton disregard for the welfare of the Child when he behaved in a manner during a court hearing that caused him to lose his acceptance into CAPP and resulted in his being sent back to prison. The evidence in the record on appeal shows that Father was out on probation prior to the birth of the Child. The evidence also shows that Father violated his probation, but was offered an alternative to being sent back to prison, which would have allowed Father to remain in the community where he could

-13-

participate in the Child's life. The record further reveals that Father's own actions taken while Father knew that the Child's mother was pregnant with his baby insured that the offer of enhanced probation would be withdrawn and that Father would be sent back to prison. Such behavior exhibits a wanton disregard for the welfare of the Child. The evidence does not preponderate against the Trial Court's finding by clear and convincing evidence that grounds existed to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and § 36-1-102(1)(A)(iv).

*In re Chyna L.M.D.*, 2012 WL 3776699, at *5.

DCS is correct in that probation violations, criminal behavior, getting incarcerated repeatedly, substance abuse, and other such conduct may give rise to wanton disregard. In fact, we can well visualize a scenario where a parent's one-time conduct is so egregious that it could, by itself, constitute wanton disregard. However, we have cautioned that it is necessary for courts to "to avoid making incarceration solely on its own into a de facto ground for termination" as our General Assembly "has not deemed it appropriate to make incarceration solely by itself a ground for termination." *In re Jonathan F.*, No. E2014-01181-COA-R3-PT, 2015 WL 739638, at *13 (Tenn. Ct. App. Feb. 20, 2015), *no appl. perm. appeal filed*. Although we made those statements in *In re Jonathan F.* as part of a discussion about noncompliance with a permanency plan, they apply to wanton disregard, as well.

In *In re Chyna L.M.D.*, the trial court made specific factual findings as to how the father's behavior prior to his incarceration exhibited wanton disregard for the child's welfare. Here, the Juvenile Court made no specific findings. It found merely that Father became incarcerated. We do not even know the status of his criminal charges. Here, as opposed to the situation in *In re Chyna L.M.D.*, the Juvenile Court's findings as to wanton disregard are based *solely* and *exclusively* on Father's incarceration, without any additional finding. Tennessee law requires more to sustain the ground of wanton disregard than just incarceration. If a parent's actions resulting in incarceration always are sufficient to show wanton disregard, our General Assembly would just need to say incarceration alone is a ground for termination of parental rights. It has not done so. This being so, we vacate the ground of wanton disregard.

Although not raised by Father, we next address whether the Juvenile Court erred in finding the ground of severe child abuse. This ground is defined as follows: "The parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse

-14-

against any child[.]" Tenn. Code Ann. § 36-1-113(g)(4) (Supp. 2019). In a March 2019 order, the Juvenile Court found that Father committed severe child abuse, as defined at Tenn. Code Ann. § 37-1-102, against two of the Child's siblings for failure to protect them from their mother's drug exposure. We have previously determined that a prior finding by a juvenile court in dependency and neglect proceedings can be res judicata in parental rights termination proceedings. *See In re Dakota C.R.*, 404 S.W.3d 484, 497 (Tenn. Ct. App. 2012). In those cases, the doctrine of res judicata prevents the issue from being re-litigated in the subsequent parental rights termination proceeding. *Id.* The record contains no hint that Father ever appealed the finding of severe child abuse. Father did not challenge the finality or validity of the order finding severe child abuse either in the proceedings below or on appeal. We find, as did the Juvenile Court, that the ground of severe child abuse was proven by clear and convincing evidence.

The third issue we address is whether the Juvenile Court erred in finding the ground of failure to manifest an ability and willingness to assume custody. This ground is defined as follows: "A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]" Tenn. Code Ann. § 36-1-113(g)(14) (Supp. 2019). One panel of this Court has held that, to withstand the first prong of this ground, a parent must manifest both ability and willingness to assume legal and physical custody or financial responsibility of a child, not just one of the two. *See In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *12-14 (Tenn. Ct. App. June 20, 2018), *no appl. perm. appeal filed*. Another panel of this Court has held to the contrary, interpreting the statute to instead mean that a petitioner has to prove both inability and unwillingness. *See In re Ayden S.*, No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at *7 (Tenn. Ct. App. May 31, 2018), *no appl. perm. appeal filed*. A split of authority has since emerged.

Father appears to concede inability. However, Father asserts that he has manifested willingness. Father argues that "he demonstrated a willingness to assume custody in that he made the maximum effort to establish a relationship with [the Child] given the circumstances of his incarceration and his inability to work the permanency plan put into place for [the Child]." We note, first, that the ground of noncompliance with the permanency plan neither was alleged nor found against Father. To that extent, Father is pushing on an open door. As to Father's "maximum effort," from this record it appears to consist of making some inquiries about video calls that led nowhere and saying that he would like a chance to assume custody of the Child. However, mere words are a poor substitute for actions. As this Court stated in *In re Amynn K.* with regard to willingness, "Father's *actions*, including his continued criminal activity and his failure to financially support the Child, raise doubt as to Father's actual willingness to assume custody or

-15-

financial responsibility for the Child." 2018 WL 3058280, at *15 (emphasis added). Here, the Juvenile Court found that "[Father] basically has done nothing to show an ability or willingness to assume legal and physical custody of the child…." Upon a careful review of the record, the evidence does not preponderate against this finding. Indeed, Father did not show up for trial even though he was released from jail and had notice of the proceedings. We need not contend with the *In re Amynn K./In re Ayden S.* split of authority because here, Father manifested neither the ability nor willingness to personally assume legal and physical custody or financial responsibility of the Child.

The second prong of this ground requires us to determine whether "placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]" Tenn. Code Ann. § 36-1-113(g)(14) (Supp. 2019). The evidence reflects that Father has unresolved substance abuse and mental health issues. In addition, Father was found to have committed severe child abuse against two of the Child's siblings. Meanwhile, the Child is well-bonded in her foster family. The Child has no relationship to speak of with Father. To remove the Child from a stable environment and return her to Father's custody poses a risk of substantial harm to the Child's physical as well as psychological welfare. We find, as did the Juvenile Court, that the ground of failure to manifest an ability and willingness to assume custody was proven by clear and convincing evidence.

The fourth and final issue we address is whether the Juvenile Court erred in finding that termination of Father's parental rights is in the Child's best interest. The best interest factors are set forth by statute as follows:

(i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

-16-

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (Supp. 2019).

Father argues that the Juvenile Court erred in its best interest analysis. Father states, for instance, that he could not forge a relationship with the Child because of his incarceration. However, the record largely is bereft of any actions on Father's part to be a parent, even bearing in mind the limits imposed by his incarceration. He did nothing of substance. Father concedes that the Child is in a loving home but disputes how significant a change of caretaker would be given the Child's young age. However, we disagree with Father's speculation that no significant consequences would be had from removing the Child from what undisputedly is a safe and loving home.

Perhaps the most crucial concern with respect to best interest is the fact that Father was found to have committed severe child abuse against two of the Child's siblings, which stemmed from Father's failure to protect them from drug exposure. That the underlying conduct occurred against the Child's siblings rather than the Child does not mean the Child somehow would not face comparable danger were she to be placed in Father's custody and care, as the testimony from trial reflects that Father has not rectified his substance abuse or mental health issues. Father's substance abuse and mental health issues certainly are relevant in considering the Child's best interest, as is Father's proclivity for going to jail. The Juvenile Court made detailed findings in consideration of the statutory best interest factors. Upon our careful review of the record, the evidence does not preponderate against any of the relevant findings. We find, as did the Juvenile Court, the evidence to be clear and convincing that termination of Father's parental rights is in the Child's best interest.

## **Conclusion**

The judgment of the Juvenile Court is vacated, in part, and affirmed, as modified, resulting in our affirming the termination of Father's parental rights, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the Appellant, James H., and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE