IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 22, 2004 Session

## IN THE MATTER OF:  C.T.S.

**Direct Appeal from the Juvenile Court for Tipton County**
**No. J10677     William A. Peeler, Judge**

_____

**No. W2003-01679-COA-R3-PT - Filed August 16, 2004**

_____

The trial court terminated Father's parental rights based on Tenn. Code Ann. § 36-1-113(g)(6) and Mother's parental rights based on Tenn. Code Ann. § 36-1-113(g)(1).  Mother and Father appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Cyburn Hillard Sullivan, III and Richard D. Cartwright, Covington, Tennessee, for the appellants, V.A.T. and W.N.S. a/k/a N.W.S.

Paul G. Summers, Attorney General and Reporter, and Elizabeth C. Driver, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

This is a termination of parental rights case.  The facts of this case are undisputed. V.A.T. ("Mother") has four biological children.  The two eldest children have not been in Mother's custody since 1997.  The Department of Children's Services ("DCS") removed a third child, D.T. from Mother's custody in 1999, when D.T. was six days old, and placed him in foster care.  D.T. tested positive for cocaine at birth, and in 2000 DCS petitioned to terminate Mother's parental rights to D.T.  However, Mother voluntarily surrendered her rights to D.T., and D.T.'s foster parents adopted him in 2001.  C.T.S., the child who is the subject of this action, is the half-brother of D.T.  C.T.S. currently is in foster care with the same family that adopted D.T.  This family also desires to adopt C.T.S.

C.T.S. has been in DCS custody almost since birth.  He was born February 16, 2001 with cocaine in his system, and Mother has admitted to smoking crack cocaine shortly before the birth.

DCS become involved with C.T.S. when the physician attending C.T.S.'s birth contacted it expressing concern that parents were unable to care for the child. In his correspondence with DCS, the attending physician stated that Mother had received no prenatal care during her pregnancy, that she had arrived at the hospital with pain and bleeding caused by the toxic effects of cocaine, that she had been in this condition for as many as 24 hours, and that both she and C.T.S. had tested positive for cocaine. He also stated that Mother was addicted to crack cocaine and that she was "unable to control her own environment much less that of this newborn child." C.T.S. has been in the care of his foster family since he was 13 days old.

During the course of its investigation, DCS determined there was an outstanding warrant for C.T.S.'s father, W.N.S. (a/k/a N.W.S.; hereinafter, "Father"). Father subsequently was arrested on drug charges. DCS initially placed C.T.S. with his paternal aunt, but removed him to DCS custody on February 21, 2001, after he was left unattended. Shortly thereafter, DCS placed C.T.S. in foster care with the family caring for D.T.

In March 2001, Mother was charged with drug offenses. At the time of her arrest, she was on probation from a 1997 drug offense. Both Mother and Father were convicted of selling cocaine. In November 2001, Father was sentenced to 15 years incarceration. Mother entered a plea of nolo contendere in August 2001, and received a nine year prison sentence.

DCS petitioned for the termination of Mother's and Father's parental rights on March 1, 2002. On April 15, 2003, one day before the trial, Father filed a motion for continuance and a motion requesting recusal of the trial judge. Mother orally joined Father's motion for continuance. The trial court denied both motions. By order of May 21, 2003, the trial court terminated Father's rights based on Tenn. Code Ann. § 36-1-113(g)(6), finding that Father had been incarcerated under a 15 year sentence while C.T.S. was under eight years of age. The trial court additionally found Mother had abandoned C.T.S.; that she had exhibited wanton disregard for C.T.S.'s safety and willfully had placed him in physical danger before his birth; that the circumstances leading to C.T.S.'s removal continued to exist; and that there was little likelihood that C.T.S. could safely be returned in the near future. The trial court also determined that C.T.S. had bonded with his foster family and half brother, that he was well cared for, and that termination of Mother's and Father's parental rights was in C.T.S.'s best interest. Mother and Father filed a timely notice of appeal to this Court.

Mother filed a motion to consider post-judgment facts in this Court, which was granted. In her motion, Mother submits that she was paroled on May 21, 2004. She further asserts that, while incarcerated, she completed her G.E.D. and participated in several programs, including a parenting class, a food and nutrition program, and a 12-step serenity program and that she currently lives with her grandmother in Covington, Tennessee.

### Issues Presented

Mother and Father present the following issues, as we restate them, for review by this Court:

(1)        Whether the trial court properly denied Father's motion for recusal.

(2)        Whether the trial court properly denied Father's and Mother's motion for continuance.

(3)        Whether clear and convincing evidence supports the trial court's judgment.

### *Standard of Review*

Our standard of review of a trial court sitting without a jury is *de novo* upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d). However, no presumption of correctness attaches to a trial court's conclusions on issues of law. *Bowden v. Ward*, 275 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d). We review a trial court's determinations on motions of recusal under an abuse of discretion standard. *Caudill v. Foley*, 21 S.W.3d 203, 215 (Tenn. Ct. App. 1999). The trial court's determination on whether to grant a motion for continuance is likewise reviewed under an abuse of discretion standard. *Knight v. Knight*, 11 S.W.3d 898, 905 (Tenn. Ct. App. 1999).

Tennessee Code Annotated § 36-1-113 governs the termination of parental rights. The code provides, in pertinent part:

> (c) Termination of parental or guardianship rights must be based upon:
>     (1) A finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and
>     (2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c)(2001). This section also provides the grounds on which parental rights may be terminated. The existence of any statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W., N.W.W., Z.W.W., & A.L.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000).

A court's determination to terminate parental rights must be supported by clear and convincing evidence. *Id.* at 474. The "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard, although it does not demand the certainty required by the "beyond a reasonable doubt" standard. *Id.* To be clear and convincing, the evidence must eliminate any substantial doubt and produce in the fact-finder's mind a firm conviction as to the truth. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *See Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn.1999).

-3-

*Motion for Recusal*

All litigants are entitled to the "cold neutrality of an impartial court" and have a right to have their cases heard by fair and impartial judges. *Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App.1998)(quoting *Leighton v. Henderson*, 220 Tenn. 91, 98, 414 S.W.2d 419, 421 (1967)). Thus, a judge should recuse himself or herself if there is any doubt regarding the judge's ability to preside impartially or if the judge's impartiality reasonably can be questioned. *Caudill*, 21 S.W.3d at 214. Parties challenging a judge's impartiality "must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned." *Davis v. Dep't of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App.1999). The alleged bias or prejudice of the judge, moreover, must come from an extrajudicial source and not be based on what the judge see or hears before him. *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998). Additionally, a party must seek recusal in a timely fashion, immediately after he becomes aware of such prejudice or impartiality. *Gotwald v. Gotwald*, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988).

In the case before this Court, Father moved for the trial court's recusal on April 15, 2003, one day before the April 16 trial date. The basis of Father's motion was his belief that the trial court had pre-judged the case and that the court would not view the evidence objectively. We find nothing in the record to support Father's contention, particularly in light of the fact that statutory grounds existed to terminate Father's rights based on undisputed objective facts. We find no abuse of discretion and affirm the denial of Father's motion for recusal.

*Motion for Continuance*

Father's motion for continuance likewise was made the day before trial. Although Mother did not file a written motion, Mother orally joined Father's motion for continuance at trial. Trial courts have wide discretion to determine whether a motion for continuance should be granted, but must exercise this discretion in an efficient manner. *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992). The age of the cause of action is a primary factor for consideration by the trial court in determining whether a continuance is justified. *Id.*

The basis of Father's motion was that his current counsel had recently been appointed to the case and that counsel was unable to meet with Father at the West Tennessee Penitentiary until April 11, 2003. However, the trial court terminated Father's parental rights based on Tennessee Code Annotated § 36-1-113(g)(6), and it is undisputed that Father was sentenced to 15 years incarceration when C.T.S. was under eight years of age. No length of continuation would have changed this fact or eliminated the grounds on which Father's rights were terminated. We affirm the denial of Father's motion for continuance.

In her oral motion to join Father's motion for continuance, Mother stated that her basis for seeking a continuance was her up-coming hearing before the parole board in July 2003. We note, however, that Mother was denied parole in July 2003. Further, the trial court terminated Mother's

parental rights based on Mother's conduct prior to her incarceration. Thus, continuance of this matter would have served no useful purpose. We find no abuse of discretion by the trial court and affirm the trial court's denial of Mother's oral motion.

### *Termination of Parental Rights*

We next turn to whether clear and convincing evidence supports a finding that grounds exist for termination of Father's parental rights based on Tennessee Code Annotated § 36-1-113(g)(6) and the termination of Mother's parental rights based on abandonment as defined in Section 36-1-102(1). Section 36-1-113(g)(6) provides that grounds for termination of parental rights exists where:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

Tenn. Code Ann. § 36-1-113(g)(6)(2001). The parties do not dispute that Father is serving a sentence of over ten years or that the sentence against him was entered when C.T.S. was under eight years of age. We accordingly affirm the finding that grounds exist for termination of Father's parental rights under Section 36-1-113(g)(6).

The trial court found as grounds for terminating Mother's parental rights that Mother had abandoned C.T.S. as provided by Section 36-1-113(g)(1). Abandonment is defined by the Code as:

> (1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;
> (ii) The child has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a

-5-

suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date;

(iii) A biological or legal father has either willfully failed to visit or willfully failed to make reasonable payments toward the support of the child's mother during the four (4) months immediately preceding the birth of the
child; provided, that in no instance shall a final order terminating the parental rights of a parent as determined pursuant to this subdivision (iii) be entered until at least thirty (30) days have elapsed since the date of the child's birth;

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child; or

(v) The child, as a newborn infant aged seventy-two (72) hours or less, was voluntarily left at a facility by such infant's mother pursuant to § 68-11- 255; and, for a period of thirty (30) days after the date of voluntary delivery, the mother failed to visit or seek contact with the infant; and, for a period of thirty (30) days after notice was given under § 36-1-142(e), and no less than ninety (90) days cumulatively, the mother failed to seek contact with the infant through the department or to revoke her voluntary delivery of the infant.

(B) For purposes of this subdivision (1), "token support" means that the support, under the circumstances of the individual case, is insignificant given the parent's means;

(C) For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child;

(D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that, for a period of four (4) consecutive months, no monetary support was paid or that the amount of support paid is token support;

(E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation;

(F) Abandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate parental or guardianship rights or seeking the adoption of a child; and

(G) "Abandonment" and "abandonment of an infant" do not have any other definition except that which is set forth in this section, it being the intent of the general assembly to establish the only grounds for abandonment by statutory definition. Specifically, it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made. Decisions of any court to the contrary are hereby legislatively overruled;

Tenn. Code Ann. § 36-1-102(1)(2001).

The trial court found that Mother was incarcerated at the time DCS filed the petition to terminate her parental rights and for the four months preceding the filing of the petition; that Mother had failed to visit and willfully failed to support C.T.S.; and that Mother had engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child. Having reviewed the entire record in this case, including Mother's testimony at trial, we affirm termination of Mother's parental rights for abandonment as defined by Section 36-1-102(1)(A)(iv). It is clear that Mother ingested crack cocaine during her pregnancy and immediately before the birth of C.T.S., knowing the effects it would have on her child. Mother's knowledge of these effects, moreover, was more than theoretical as she previously had given birth to a child who also was born addicted to cocaine. Such conduct clearly exhibits a wanton disregard for the welfare of the child. It is also clear from the record that Mother has never attempted to support C.T.S., and that she made very little attempt to visit or contact him. We accordingly affirm the trial court's determination that grounds existed to terminate Mother's parental rights.

The trial court further found that termination of Mother's and Father's parental rights are in the best interest of C.T.S. Neither Mother nor Father submit the trial court erred in this determination and, having reviewed the record, we agree that termination is in C.T.S.'s best interest.

### *Holding*

In light of the foregoing, we affirm termination of Mother's and Father's parental rights to C.T.S. Costs of this appeal are taxed to the Appellants, V.A.T. and W.N.S., a/k/a N.W.S., and their sureties, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE