IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 2, 2024

## IN RE NEVAEH K.

**Appeal from the Juvenile Court for Sullivan County**
**No. 20-JV-43626     Mark Toohey, Judge**

_____

**No. E2023-01106-COA-R3-PT**
_____

This is a termination of parental rights case. Both parents appeal the trial court's determination of the existence of statutory grounds to terminate their rights, as well as its conclusion that termination is in their child's best interests. The father also challenges whether the trial court erred in denying his motion for in-person attendance at trial. Upon our review of the record, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Samuel G. Hall, Kingsport, Tennessee, for the appellant, Chester H.

Samuel E. White, Kingsport, Tennessee, for the appelee, Faith K.

Jonathan Skrmetti, Attorney General and Reporter, and Clifton Wade Barnett, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

## BACKGROUND AND PROCEDURAL HISTORY

Nevaeh K. ("Child") was born to Faith K.[1] ("Mother") in August 2019. The Tennessee Department of Children's Services ("DCS") was notified of Child's birth due

_____

[1] This Court has a policy of protecting the identities of children involved in parental termination cases and accordingly abbreviates certain names appearing in the Opinion.

to the presence of methamphetamine, amphetamine, and THC in her system. At the time of Child's birth, Mother was married. However, Mother's husband was incarcerated during the time Child was conceived, and he was subsequently adjudicated not to be the legal or biological parent of Child.

Upon discovering she was pregnant, Mother informed Chester H. ("Father") about the pregnancy and that she believed him to be the father. At the time Mother initially informed Father of his potential paternity, he alleges he was under the belief that he was unable to father children due to a health condition. Nevertheless, the two moved in together, and Father began offering various forms of support, including purchasing items such as pregnancy tests and diapers.

Both before and during the pregnancy, Mother was an addict and used methamphetamine. Father also used methamphetamine with Mother during the pregnancy. Mother also sold methamphetamine to earn money. Moreover, Mother testified to using drugs just days before Child's birth. Mother's drug use led to Child being diagnosed post-birth with Neonatal Abstinence Syndrome ("NAS"). In response to Child's NAS diagnosis and positive drug test, DCS filed a petition for temporary legal custody with the Juvenile Court of Sullivan County ("the trial court"). DCS took custody of Child pursuant to an ex-parte custody order granting its petition. The Child was later found to be dependent and neglected by court order entered by the trial court on January 22, 2020.

Following Child's birth, Father and Mother ceased their relationship. On November 22, 2019, Father was arrested while in possession of methamphetamine and several firearms. Father later pled guilty to conspiracy to distribute at least fifty grams of methamphetamine. Although Father had not been sentenced by the last day of the termination trial, his impending sentence included a minimum of ten years of imprisonment, along with fines and an eventual supervised release.

After Child's birth, Mother obtained full-time work earning a minimum wage but did not obtain stable housing, moving weekly. Meanwhile, DCS took several measures to assist Mother in planning for Child's safe care, including scheduling meetings, investigating potential relationship placements, monitoring Child's status in a resource home, and developing permanency plans. Prior to the filing of the termination petition, two permanency plans were created and ratified by the trial court. The trial court ratified the initial permanency plan on January 3, 2020, and the second amended permanency plan on August 14, 2020, finding the plans to be reasonable and related to Child's placement with DCS.

The responsibilities outlined in the amended permanency plan remained substantively the same as the original and required Mother to:

1. resolve all pending charges to the point of no pending incarceration and execute a release of information associated with her probation;
2. participate in a clinical parenting assessment with an alcohol and drug component and follow all recommendations;
3. participate in and pass requested drug screens;
4. complete the NAS class with the Sullivan County Health Department and provide DCS with a certificate of completion;
5. participate in 4.3 hours of visitation per month;
6. obtain and maintain safe and stable housing;
7. maintain biweekly contact with DCS;
8. provide DCS with updated contact information;
9. obtain and maintain a legal source of income and provide documentation to DCS;
10. pay $20 a month in child support; and
11. maintain insurance on Nevaeh when/if it becomes available and provide proof of coverage to DCS.

Mother failed to engage with DCS and the resources it offered in any significant manner. Moreover, Mother neither visited nor provided financial support for Child. Mother later alleged that the money she earned working was used to remedy her legal challenges, as she had multiple outstanding warrants.

Mother was arrested on December 13, 2019, and remained incarcerated throughout the entire termination trial. She subsequently pled guilty to conspiracy to distribute methamphetamine, and as to her potential sentence, she testified as follows: "What I have been told is I am looking at probably around seven years or so."

On October 26, 2020, DCS filed a petition to terminate the parental rights of both Mother and Father. Following a trial, the trial court found clear and convincing evidence to support several grounds to terminate Mother's and Father's parental rights as well as clear and convincing evidence that termination of Mother's and Father's parental rights was in Child's best interests. This appeal followed.

### ISSUES PRESENTED

Father raises four issues for our review on appeal, restated as follows:

1. The trial court erred in finding that the grounds terminating Father's rights were proven by clear and convincing evidence pursuant to Tenn. Code Ann. § 36-1-113;
2. The trial court erred in finding that the best interest factors set out in Tenn. Code Ann. § 36-1-113(i) supporting termination of Father's parental rights were proven by clear and convincing evidence;

3. The trial court erred in overruling Father's motion for in-person attendance at trial; and
4. The trial court erred in granting the termination of Father's parental rights because the petitioner failed to conform with Tenn. Code Ann. § 36-1-113(f).

In addition to requesting that we overturn various statutes associated with the termination of parental rights,[2] Mother raises additional issues for our review on appeal, which we revise and restate as follows:

1. The trial court erred in finding grounds for substantial noncompliance by Mother with the permanency plan pursuant to Tenn. Code Ann. § 36-1-113;
2. The trial court erred in finding that the ground terminating Mother's rights based upon failure to manifest an ability and willingness to assume custody was proven by clear and convincing evidence pursuant to Tenn. Code Ann. § 36-1-113;
3. The trial court erred in finding that the best interest factors set out in Tenn. Code Ann. § 36-1-113(i) supporting termination of Mother's parental rights were proven by clear and convincing evidence.

Consistent with *In re Carrington H.*, we "review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 525-526 (Tenn. 2016).

## STANDARD OF REVIEW

"A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *Id.* at 521 (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). However, "[w]ell-defined circumstances" exist "under which a parent's rights may be terminated" *In re Roger T.*, No. W2014-02184-COA-R3-PT, 2015 WL 1897696, at *6 (Tenn. Ct. App. Apr. 27, 2015). These circumstances are statutorily defined, and a court must determine the existence of these statutory grounds by clear and convincing evidence. *In re Andrew L.*, No. E2022-01465-COA-R3-PT, 2023 WL 5013253, at *2 (Tenn. Ct. App. Aug. 7, 2023). After establishing at least one statutory ground relative to

---

[2] Mother failed to raise these issues during the trial court proceedings. "It has long been the general rule that questions not raised in the trial court will not be entertained on appeal[.]" *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983). As such, we conclude that Mother has waived these issues on appeal. Of course, as noted elsewhere, we ultimately review all grounds for termination found by the trial court against Mother.

a parent, a court must determine by clear and convincing evidence that termination of parental rights is in the child's best interests. *Id*. Clear and convincing evidence is demonstrated when "there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

In light of the heightened burden of proof, we employ the following standard of review:

> First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights.

*In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

## DISCUSSION

The trial court determined that several separate grounds existed for the termination of both Mother's and Father's parental rights. We first address the propriety of the trial court's grounds as to Mother, turning to the grounds related to Father thereafter.

*Abandonment by an incarcerated parent*

The first ground supporting the termination of Mother's rights is abandonment pursuant to Tennessee Code Annotated sections 36-1-113(g)(1) and 36-1-102(1)(A)(iv). If a parent "is incarcerated at the time of the filing of a proceeding, pleading, petition, or amended petition to terminate[,]" the trial court may establish abandonment if the parent has

> *(a)* Failed to visit, has failed to support, or has failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding the parent's or guardian's incarceration;
>
> . . . .
>
> (*c*) Has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(iv).[3] The trial court found that Mother failed to visit Child in the four consecutive months preceding her incarceration, despite the lack of any legal impediment preventing visitation and knowing Child was in DCS custody. The trial court next found that Mother failed to provide any monetary support for Child in the four months preceding her incarceration. Finally, the trial court found that Mother exhibited a wanton disregard for the welfare of Child by abusing illegal substances that caused Child to test positive for amphetamine, methamphetamine, and THC at birth.

In light of these findings, the trial court concluded that DCS had proven the ground of abandonment applicable to an incarcerated parent by clear and convincing evidence. We agree. Upon our review of the record, we highlight that Mother did not visit Child from August 2019 to December 2019, and she failed to offer any legitimate excuse for her absence. Moreover, despite working a full-time job earning minimum wage, Mother failed to provide any form of financial support to Child. Inasmuch as Mother claims she was not aware she had to financially support Child, we note that she is presumed to have knowledge of her duty to support. *See* Tenn. Code Ann. § 36-1-102(1)(H). As to whether Mother exhibited wanton disregard for the welfare of Child, we note that Mother's exposure of Child to illegal and controlled substances while in utero has caused Child significant health complications, which standing alone could substantiate a finding of wanton disregard. *See In re C.T.S.*, 156 S.W.3d 18, 25 (Tenn. Ct. App. 2004) (finding wanton disregard on the basis of a mother's use of crack cocaine during a period she knew she was pregnant). However, Mother's continued illegal use of controlled substances, prior to her incarceration, further support a finding of wanton disregard.

As such, we find no error in the trial court's conclusion that clear and convincing evidence existed to terminate Mother's parental rights on the grounds of abandonment by failure to visit, failure to support, and wanton disregard for Child's welfare under Tennessee Code Annotated section 36-1-102(1)(A)(iv).

*Abandonment through failure to provide a suitable home*

The trial court next made several findings underlying abandonment through failure to provide a suitable home pursuant to Tennessee Code Annotated sections 36-1-113(g)(1) and 36-1-102(1)(A)(ii)(*a-c*). In pertinent part, a trial court may support this ground pursuant to the following statutory provisions:

> (ii)(*a*) The child has been removed from the home or the physical or legal custody of a parent or parents or guardian or guardians by a court order at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected

---

[3] Unless otherwise noted, all statutes discussed in this Opinion are the versions effective on October 26, 2020, the date DCS filed its petition to terminate.

child, and the child was placed in the custody of the department or a
licensed child-placing agency;

(*b*) The juvenile court found, or the court where the termination of
parental rights petition is filed finds, that the department or a licensed
child-placing agency made reasonable efforts to prevent removal of
the child or that the circumstances of the child's situation prevented
reasonable efforts from being made prior to the child's removal; and

(*c*) For a period of four (4) months following the physical removal,
the department or agency made reasonable efforts to assist the parent
or parents or the guardian or guardians to establish a suitable home
for the child, but that the parent or parents or the guardian or guardians
have not made reciprocal reasonable efforts to provide a suitable
home and have demonstrated a lack of concern for the child to such a
degree that it appears unlikely that they will be able to provide a
suitable home for the child at an early date. The efforts of the
department or agency to assist a parent or guardian in establishing a
suitable home for the child shall be found to be reasonable if such
efforts equal or exceed the efforts of the parent or guardian toward the
same goal, when the parent or guardian is aware that the child is in the
custody of the department;

Tenn. Code Ann. § 36-1-102(1)(A)(ii)(*a-c*).

In the instant case, the trial court granted a petition for removal of Child filed by
DCS, pursuant to DCS's allegation that Child is dependent and neglected. Furthermore,
the trial court made findings in the ex parte custody order indicating that the circumstances
of the child's situation prevented reasonable efforts from being made prior to removal.
Finally, the trial court noted several actions DCS took to help Mother find Child a suitable
home in the four months following removal, including investigating placements with
family, addressing the immediate needs of Child, and conducting several meetings intended
to help Mother create a plan for Child's residence. The trial court found that Mother did
not demonstrate the same level of effort as DCS to find Child a home, and Mother's failure
to do so, the court found, made it unlikely she could provide Child a suitable home at an
early date.

For the foregoing reasons, the trial court concluded DCS had proven, by clear and
convincing evidence, the ground of abandonment by failure to provide a suitable home
against Mother. We agree. After DCS removed Child, Mother was obligated to make
reasonable efforts in reciprocation to the efforts DCS made to find Child a suitable home.
*See* Tenn. Code Ann. § 36-1-102(1)(A)(ii)(*c*). However, Mother refused to provide DCS
with her address or phone number so they could reach her, and she failed to maintain

regular contact with DCS.  In the time between the initiation of this custodial dispute and Mother's incarceration, she did not have regular housing.  After her incarceration, Mother testified that she planned to live in a halfway house, but she did not provide assurances that Child could also live in the halfway house, or if such a residence would be appropriate for Child.

As such, we conclude that the trial court did not err in finding clear and convincing evidence to establish termination of Mother's parental rights on the ground of abandonment through failure to provide a suitable home.

*Substantial noncompliance with the permanency plan*

Tennessee Code Annotated section 36-1-113(g)(2) provides "substantial noncompliance . . . with the statement of responsibilities in a permanency plan" as a ground for termination of parental rights. The trial court found that, although DCS created a reasonable permanency plan, Mother failed to comply with several significant elements of the plan. For example, Mother did not resolve all pending legal charges, failed to pay support for Child or Child's health insurance, failed to maintain safe housing, and failed to participate in or pass random drug screens, among other issues. In light of these findings, the trial court concluded, by clear and convincing evidence, that Mother was in substantial noncompliance with the permanency plans.

We agree. In assessing whether a parent is in substantial noncompliance with a permanency plan, the significance and extent of the noncompliance are key components of our analysis. *In re M.J.B.*, 140 S.W.3d 643, 656 (Tenn. Ct. App. 2004). As such, minor or trivial deviations do not substantiate a finding of substantial noncompliance. *Id*. Here, the main objectives of the permanency plan centered on eliminating Mother's drug use, promoting Mother's relationship with Child, and increasing Mother's financial and housing stability.  We highlight that Mother's drug-related criminal activity did not cease in response to the permanency plans and eventually led to her incarceration.

Moreover, Mother did not have stable housing prior to her incarceration and did not have appropriate housing for Child upon release.  We are aware that Mother's incarceration likely stymied her ability to gain stable housing. However, under these circumstances, incarceration is not an excuse for failing to fulfill her parental duties. *See In re Aiden R.*, No. E2015-01799-COA-R3-PT, 2016 WL 3564313, at *9 (Tenn. Ct. App. June 23, 2016) ("Her incarceration prevented her from accomplishing other reasonable responsibilities of the permanency plan, such as obtaining housing and source of support and exhibiting appropriate parenting skills. We conclude these failures amount to substantial noncompliance with the requirements of the permanency plans."). In light of such findings, we conclude the trial court did not err in finding clear and convincing evidence existed to terminate Mother's parental rights on the ground that Mother was in substantial noncompliance with the permanency plan.

*Persistent Conditions*

Pursuant to Tennessee Code Annotated section 36-1-113(g)(3), parental rights may be terminated if

> (3)(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:
>
> > (i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;
> >
> > (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and
> >
> > (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3). The trial court found that Mother's use of amphetamine, methamphetamine, and THC, which precipitated neglect and abuse of Child, provided the main basis for Child's removal. Moreover, the trial court determined that these conditions still persist due to Mother's unaddressed substance abuse issues, and that there is little chance these issues will be remedied soon so that the child may safely return home. Finally, the trial court found that continuation of the parent-child relationship greatly diminishes the chances of Child's placement into a safe, stable, and permanent home, concluding that DCS had proven the ground of persistent conditions by clear and convincing evidence.

We agree. It is not disputed that, prior to her incarceration, Mother's living situation was heavily influenced by illegal drug use. Although Mother testified to attending a drug and alcohol program while incarcerated and a desire to avoid drugs and drug use going forward, the trial court concluded Mother's testimony concerning her desire to quit using illegal drugs was not credible. (II, 149.) "[B]ecause trial courts are 'uniquely positioned to observe the demeanor and conduct of witnesses[,]'" we see no reason to question the trial court's credibility assessment in this matter. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). As such, we conclude that the trial court did not err in finding clear and convincing

evidence to terminate Mother's parental rights on the ground of persistent conditions.

*Severe Child Abuse*

Pursuant to Tennessee Code Annotated section 36-1-113(g)(4), parental rights may be terminated upon a finding of severe child abuse, as it is defined in Tennessee Code Annotated section 37-1-102(b)(27). The trial court found that Mother committed severe child abuse by exposing Child to substance abuse in utero, which caused Child to suffer in the womb and continue to suffer presently. The trial court concluded that DCS had proven severe child abuse by clear and convincing evidence. We agree. This Court has previously held that "severe child abuse can result from prenatal drug use." *In re Benjamin M.*, 310 S.W.3d 844, 848 (Tenn. Ct. App. 2009). Here, Child tested positive for amphetamine, methamphetamine, and THC upon birth, suffering immediate and ongoing health issues as a result. Given that Mother last used illegal drugs within days of Child's birth, we agree with the trial court's finding that Mother knew or should have known that her substance abuse could have harmed Child.  In light of these facts, we conclude the trial court did not err in finding clear and convincing evidence existed to terminate Mother's parental rights on the ground of severe child abuse.

*Failure to manifest an ability and willingness to assume custody*

Pursuant to Tennessee Code Annotated section 36-1-113(g)(14), parental rights may be terminated upon a finding that parent has "failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]" Tenn. Code Ann. § 36-1-113(g)(14). Our Supreme Court has recently discussed the analysis underpinning this ground, stating

> [t]wo prongs must be proven by clear and convincing evidence to terminate parental rights under this statute: (1) the parent or legal guardian failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the child; and (2) placing the child in the parent's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

*In re Neveah M.*, 614 S.W.3d 659, 674-75 (Tenn. 2020).  Our Supreme Court also clarified that the statute

> places a conjunctive obligation on a parent or guardian to manifest both an ability and willingness to personally assume legal and physical custody or financial responsibility for the child. If a person seeking to terminate parental rights proves by clear and convincing proof that a parent or guardian has

- 10 -

failed to manifest either ability or willingness, then the first prong of the statute is satisfied.

*Id.* at 677.

The trial court's order concluded both prongs were established and that DCS had proven the ground by clear and convincing evidence. Based on the record transmitted to us on appeal, we agree with the trial court's determination.

On appeal, Mother argues that the trial court erred in not permitting her adequate time to demonstrate meaningful progress and, as we construe her argument, that her testimony demonstrates a willingness to assume custody. However, willingness alone is not enough. As noted above, the first prong of the statute places a conjunctive obligation on a parent, and DCS may satisfy the first prong by demonstrating Mother's inability to assume custody by clear and convincing evidence. *Id.* at 674-77. As to her ability to assume custody, we emphasize that Mother continued to engage in illegal drug-related activities after Child's birth, which eventually led to her incarceration. Moreover, Mother's testimony reflects that she plans on staying in a halfway house for an indeterminate amount of time after her release from prison. Most strikingly, Mother testified that she believes it is not in Child's best interest to come into her custody immediately upon her release.

As to the second prong, we find our previous discussion of substantial harm to be helpful:

> By way of illustration, forcing a child to begin visitation with a near-stranger would make psychological harm sufficiently probable. Or placing a child with a parent who engaged in repeated criminal conduct that required incarceration would put a child at risk of substantial physical or psychological harm. And parents with a significant, recent history of substance abuse, mental illness, and/or domestic violence could lead to a conclusion of a risk of substantial harm.

*In re Brianna B.*, No. M2019-01757-COA-R3-PT, 2021 WL 306467, at *6 (Tenn. Ct. App. Jan. 29, 2021) (internal citations omitted). Mother does not have a meaningful relationship with Child. Moreover, Mother has demonstrated a history of repeated criminal conduct, which we conclude presents a substantial risk to the welfare of Child. For the foregoing reasons, we conclude the trial court did not err in finding clear and convincing evidence existed to terminate Mother's parental rights on the ground of failure to manifest an ability and willingness to assume legal and physical custody of Child.

*Termination of a putative father's parental rights*

As to the termination of Father's rights, the trial court made findings pursuant to
- 11 -

Tennessee Code Annotated section 36-1-113(g)(9) which provides guidance in the termination of parental rights of a putative father. In pertinent part, the statute provides as follows:

> (9)(A) The parental rights of any person who, at the time of the filing of a petition to terminate the parental rights of such person, or if no such petition is filed, at the time of the filing of a petition to adopt a child, is the putative father of the child may also be terminated based upon any one (1) or more of the following additional grounds:
>           . . . .
>
> (ii) The person has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines promulgated by the department pursuant to § 36-5-101;
>
> (iii) The person has failed to seek reasonable visitation with the child, and if visitation has been granted, has failed to visit altogether, or has engaged in only token visitation, as defined in § 36-1-102;
>
> (iv) The person has failed to manifest an ability and willingness to assume legal and physical custody of the child;
>
> (v) Placing custody of the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child; or
>
> (vi) The person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity, or as required in § 36-2-318(j), or after making a claim of paternity pursuant to § 36-1-117(c)(3)[.]

Tenn. Code Ann. § 36-1-113(g)(9). The trial court made findings concerning all five of the above grounds for termination of Father's parental rights. Specifically, it found that Father failed to make reasonable and consistent payments for Child's support, without good cause or reason; that he failed to seek reasonable visitation or visit with Child; that he failed to manifest a willingness and ability to take custody of Child; that he failed to file a petition for paternity after notice from Mother; and that placing custody of Child with Father would pose a risk of substantial harm to Child's physical or psychological welfare. In support of these determinations, the trial court found that Father was engaged in illegal drug abuse, similar to Mother, and that he is presently incarcerated for said actions. The trial court also determined that Father failed to file a petition within thirty days after receiving notice of alleged paternity from Mother, that he failed to make proper support payments after

receiving notice, and that he abandoned Mother and Child after Child's birth.

Upon our review of the record, we agree with the trial court's findings. As to the last of the above grounds, we observe that notice of alleged paternity may be provided by Mother and may be communicated orally. Tenn. Code Ann. § 36-1-113(g)(9)(B)(i-ii). Although Father argues he did not receive notice of alleged paternity until he was incarcerated, Mother testified that she informed him of alleged paternity while still pregnant with Child. (V3 pg 58) Even if he had not received notice of his alleged paternity until DCS sent him a letter of confirmation of paternity in the summer of 2020, Father never filed a petition to establish paternity at any point.

As to the remaining grounds, we turn first to whether Father failed to make reasonable child support payments. Mother and Father testified that Father purchased various items for Mother during her pregnancy to assist her with the pregnancy. However, after Child's birth, Mother and Father ceased their relationship, and Father failed to offer any more financial support. When DCS confirmed to Father that he was the biological parent of Child, Father still failed to make child support payments. As such, we conclude the trial court did not err in finding clear and convincing evidence existed to terminate Father's parental rights on the ground of failure to make reasonable and consistent child support payments.

We next turn to whether Father failed to visit or seek reasonable visitation with Child. As aforementioned, Father and Mother ceased their relationship shortly after Child's birth. Father did not interact with Mother or Child between that moment and his subsequent incarceration. Furthermore, he failed to petition the court for visitation until February 2022, well over a year after the termination proceedings began. Therefore, we conclude the trial court did not err in finding clear and convincing evidence existed to terminate Father's parental rights on the ground of failure to visit or seek reasonable visitation with Child.

The next ground concerns whether Father failed to manifest an ability and willingness to assume legal and physical custody of Child. Again, we note that Father willingly left Mother and Child after the pregnancy, despite Mother informing Father that Child is his progeny. Father only began demonstrating interest in Child after his incarceration through his participation in the termination proceeding. In light of Father's previous voluntary abandonment of child and his current incarceration, we conclude the trial court did not err in finding clear and convincing evidence existed to terminate Father's parental rights on the ground of failure to manifest an ability and willingness to assume legal and physical custody.

Finally, we assess whether placing Child in Father's legal and physical custody would pose a risk of substantial harm to Child's physical or psychological welfare. Father has displayed a history of criminal conduct that ultimately led to his current lengthy incarceration. Moreover, Father ingested methamphetamine with Mother, while Mother

- 13 -

was pregnant. Taken in tandem, the facts demonstrate that Father has participated in activities that harmed Child, raising serious doubt that Child would be safe in Father's custody upon his eventual release from incarceration. Therefore, we conclude the trial court did not err in finding clear and convincing evidence existed to terminate Father's parental rights on this ground concerning a risk of substantial harm to Child.

In conclusion, we find that the trial court did not err in finding clear and convincing evidence existed to support the termination of Father's parental rights on all five grounds provided by Tennessee Code Annotated section 36-1-113(g)(9).

*Motion to Appear in Person*

Father filed a motion for in-person attendance, requesting that he be permitted to personally attend hearings despite his incarceration. The trial court ultimately denied the motion because Father was in federal custody in North Carolina and in light of the COVID-19 dangers. Instead, the trial court permitted Father to participate via Zoom throughout the proceedings. On appeal, Father asserts that the trial court erred in denying his motion for in-person attendance and cites to instances in the record reflecting connectivity issues.

We review a trial court's denial of an incarcerated parent's motion to appear in person under an abuse of discretion standard. *In re Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at *12 (Tenn. Ct. App. Oct. 30, 2007). Section 36-1-113(f)(3) provides the trial court broad discretion to fashion the means of permitting an incarcerated parent to participate in trial, stating, in pertinent part as follows regarding the incarcerated parent's right to participate:

> [A]t the discretion of the court, *such participation may be achieved through personal appearance, teleconference, telecommunication* or other means deemed by the court to be appropriate under the circumstances[.]

Tenn. Code Ann. § 36-1-113(f)(3) (emphasis added). We have previously discussed the applicability of Zoom to this statute, concluding that participation in this matter satisfies due process requirements. *In re Bentley J.*, No. M2022-00077-COA-R3-PT, 2022 WL 16559454, at *4 (Tenn. Ct. App. Nov. 1, 2022). Moreover, we concluded then, as we do now, that Zoom affords an incarcerated parent ample opportunity to participate in the termination proceedings. *Id.* As to Father's cited concerns of connectivity issues, we note that the record reveals that the trial court took steps to safeguard the parties' meaningful participation when issues were brought to its attention. By way of example, on one occasion when Father expressed that he could not hear, the trial court immediately directed the guardian ad litem in the case to "get a little closer here and speak up." The transcript reflects that questioning of the witness under examination then continued. On another occasion, the trial court ordered the proceeding continued when Mother was unable to connect to the hearing through Zoom. These are but a few examples in the record where

steps were taken by either the court or examining counsel to ensure that the parties could hear and that the participation by Zoom was meaningful. In light of this and the foregoing discussion on this issue, we discern no abuse of discretion in the trial court's denial of Father's motion to appear in person.

*Notice*

Father argues that he was never provided proper service of DCS's petition to terminate his parental rights because he did not receive "official notice[,]" which was allegedly attached as a part of DCS's petition to terminate Father's rights. In assessing whether notice was properly provided, we first turn to the pertinent statutory language:

> (f) Before terminating the rights of any parent or guardian who is incarcerated or who was incarcerated at the time of an action or proceeding is initiated, it must be affirmatively shown to the court that such incarcerated parent or guardian received actual notice of the following:
>
> (1) The time and place of the hearing to terminate parental rights;
>
> (2) That the hearing will determine whether the rights of the incarcerated parent or guardian should be terminated;
>
> (3) That the incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian should be terminated, and, at the discretion of the court, such participation may be achieved through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances;
>
> (4) That if the incarcerated parent or guardian wishes to participate in the hearing and contest the allegation, such parent or guardian:
>
>> (A) If indigent, will be provided with a court-appointed attorney to assist the parent or guardian in contesting the allegation; and
>>
>> (B) Shall have the right to perpetuate such person's testimony or that of any witness by means of depositions or interrogatories as provided by the Tennessee Rules of Civil Procedure; and
>
> (5) If, by means of a signed waiver, the court determines that the incarcerated parent or guardian has voluntarily waived the right to

- 15 -

participate in the hearing and contest the allegation, or if such parent or guardian takes no action after receiving notice of such rights, the court may proceed with such action without the parent's or guardian's participation.

Tenn. Code Ann. § 36-1-113(f).

As to Father's main contention, we emphasize that a court may rely on whether a parent has actual notice, rather than "official notice." Upon our review of the record, we note that Father participated in the trial hearings via Zoom, understanding that the proceeding would determine whether his parental rights would be terminated. Moreover, Father was appointed counsel who represented him throughout the proceedings. Under these circumstances, we conclude that Father had actual notice of the proceeding sufficient to satisfy Tennessee Code Annotated section 36-1-113(f).

*Best Interests*

After establishing separate grounds for the termination of Mother's and Father's parental rights, the trial court analyzed whether termination of their parental rights was in Child's best interests pursuant to Tennessee Code Annotated section 36-1-113(i). As an initial matter, we note that the trial court employed the statutory factors as amended effective April 22, 2021. Because DCS filed its termination petition on October 26, 2020, the statutory factors effective March 6, 2020, to April 21, 2021, are the appropriate factors to employ. *See In re Bralynn A.*, No. M2021-01188-COA-R3-PT, 2022 WL 2826850, at *9 (Tenn. Ct. App. July 20, 2022) (explaining that the filing date of the termination petition dictates which version of the statute is employed), *appeal denied* (Tenn. Aug. 12, 2022). However, "this Court has held that there was no reversible error when the trial court relies on the wrong factors because the old factors are essentially contained within the new factors." *Id*. Both Mother and Father admit that the use of the wrong version of the statutory factors does not constitute reversible error, but nevertheless, they contend that the trial court would have weighed evidence differently had it used the appropriate factors.

According to the statute effective March 6, 2020, to April 21, 2021, the statutory factors regarding a child's best interests include, but are not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

- 16 -

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). In conducting its best interests analysis, the trial court noted numerous facts supporting the notion that termination is in Child's best interests, including the parents' instability, incarceration, criminal activity, Child's needs, and Child's bond with her foster family. Moreover, the trial court specifically noted that "the parents have made no change in their conduct or lifestyle." We find those facts and considerations similarly persuasive in our own analysis.

Both Mother and Father have a history of criminal activity related to drug abuse and trafficking. Indeed, this drug use severely harmed Child while in utero, leading to lasting health complications.

Prior to their incarceration, neither Mother nor Father demonstrated financial or housing stability. Furthermore, neither parent conducted reasonable visitation or maintained a significant presence in Child's life, nor did they demonstrate an ability or willingness to offer Child financial support. Their incarcerations subsequent to Child's birth further undermines their potential to offer this kind of support to Child.

Finally, Child has nearly exclusively known support and care from her foster family, and there is evidence demonstrating that Child has grown attached to the foster family. To remove Child from this support structure would doubtlessly have a negative impact on Child's welfare.

In light of the foregoing, we conclude that clear and convincing evidence supports

it is in Child's best interests for Mother's and Father's parental rights to be terminated.

## CONCLUSION

In light of the foregoing, the trial court's termination of Mother's and Father's parental rights is affirmed.

_s/ Arnold Goldin_
ARNOLD GOLDIN, JUDGE
